## City of Austin v. Austin City Cemetery Association.

### No. 1192. Decided April 13, 1903.

**City—Regulation of Public Cemetery—Restriction of Price of Lots.**

Where a city has, by a reasonable and valid ordinance, prohibited the establishment of a cemetery within certain limits, its permission, granted by ordinance, to a company to establish a cemetery on certain grounds within such limits and under prescribed regulations, including a restriction on the price for which lots should be sold, was sufficient consideration for the agreement by the company to accept such conditions, and the city could maintain injunction against the company charging more than the limit fixed for lots in such cemetery. (P. 393.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*V. L. Brooks,* for appellant.—A grant of power to a municipal corporation "to do all acts and make all regulations which may be necessary or expedient for the promotion of health or suppression of disease" is sufficiently comprehensive to authorize such corporation to contract with a private cemetery company for the sale of its lots to the public at prices agreed on in such contract, if local conditions in and contiguous to the city are such as to render it expedient for the protection of public health that the territory used for cemetery purposes in and contiguous to such city should be restricted and limited to the smallest extent adequate to satisfy the needs of the public for burial purposes, and if local conditions are further such that regulations so restricting and limiting such territory can only be made effective by securing to the public the privilege of acquiring cemetery lots in authorized burial places at reasonable prices. Cleburne Water Co. v. City of Cleburne, 13 Texas Civ. App., 141; City of Austin v. Austin City Cemetery Assn., 87 Texas, 330; Brown v. Duplessis, 14 La. Ann., 842; Decatur Gas Co. v. City of Decatur, 120 Ill., 67; City of Rushville v. Rushville Gas Co., 132 Ind., 575; Western Gas Co. v. Mendenhall, 142 Ind., 538; City of Newport v. Newport Light Co., 84 Ky., 166; City of Indianapolis v. Consumers' Gas Co., 140 Ind., 107; School District v. Ohio Valley Gas Co., 25 Atl. Rep., 868; City of Winfield v. Winfield Water Co., 33 Pac. Rep., 714; Smith v. City of Birmingham, 16 So. Rep., 124; House v. Houston Waterworks Co., 88 Texas, 233; Dunn v. City of Austin, 77 Texas, 139; Golden Canal Co. v. Bright, 8 Colo., 144.

The facts alleged in appellant's petition show ample consideration for the contract sued on in this, that the cemetery association derived from such contract the valuable right to operate its cemetery as an addition to the city cemetery and under the care and supervision of a paid city employe. City of St. Louis v. The Maggie P., 25 Fed. Rep., 202.

Under its charter power to purchase, establish and regulate cemeteries and to regulate the burial of the dead, the city of Austin has the right to determine for itself the location and extent of cemeteries within

the city; and its ordinances prescribing such regulations are reasonable and valid if sufficient cemetery facilities be thereby authorized to satisfy the public needs. Therefore, appellee had no right to establish a cemetery on its land without the permission of the city, and the act of the city in granting it such permission constitutes ample consideration for the agreement of appellee not to charge for cemetery lots and burial spaces prices exceeding those specified in such agreement. City of Austin v. Austin City Cemetery Assn., 87 Texas, 330.

Defendant's general demurrer to plaintiff's amended original petition was properly sustained, and plaintiff having declined to further amend its pleading, judgment for defendant dismissing the cause was correctly rendered. City of Austin v. Austin City Cemetery Assn., 87 Texas, 330; Taylor v. Dunn, 80 Texas, 652; House v. Houston Water Co., 88 Texas, 233; Galveston Railway Co. v. Galveston, 90 Texas, 398, 91 Texas, 17; Butchers' Union Co. v. Crescent City Co., 111 U. S., 746; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S., 650; New Orleans Water Co. v. Rivers, 115 U. S., 674; Louisville Co. v. Citizens' Gas Co., 115 U. S., 683; Los Angeles v. Hollywood Cemetery Assn., 124 Cal., 344; Ritchey v. City of Canton, 46 Ill. App., 185; Austin v. Murray, 16 Pick., 121; Lake View v. Rose Hill Cemetery Co., 70 Ill., 191; Kincaid's appeal, 66 Pa. St., 411; Cooley, Const. Lim., 6 ed., 708; Lewis on Em. Dom., secs. 6, 156, 157, 176.

*D. W.* and *D. H. Doom,* for appellee.

BROWN, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals for the Third Supreme Judicial District, as follows:

"The Court of Civil Appeals of the Third Supreme Judicial District certifies that there is now pending in said court the above styled and numbered cause. The cause of action, as alleged by the pleadings of the plaintiff, is as follows:

"Appellant, the city of Austin, instituted this suit for injunction against appellee, the Austin City Cemetery Association, in the District Court of Travis County, Texas, for the Fifty-third Judicial District, by an original petition filed on March 20, 1902. The case was presented in the court below on the averments of the first amended original petition of plaintiff, which contains allegation in substance as follows, viz:

" '1. That plaintiff is a municipal corporation of more than ten thousand inhabitants, chartered by special act of the Legislature of the State of Texas; that it is situated in Travis County, in said State, and that R. E. White, who resides in said county and State, is its mayor.

" '2. That defendant is a private corporation, chartered under and by virtue of the laws of the State of Texas, for the purpose of maintaining a cemetery corporation and selling cemetery lots in the city of Austin; that its principal office is located in Travis County, said State,

and that Otto Bergstrom, who resides in Travis County, Texas, is the president of said defendant corporation.

" '3. That the city còuncil of plaintiff has, and at all time herein mentioned has had, the following among other charter powers, viz: "To make regulations to prevent the introduction or spreading of contagious disease within the city, and to make and enforce all other regulations necessary to secure the general health of its inhabitants.

" "To define what shall be a nuisance within the city, and to punish the author thereof by penalties, fines and imprisonment.

" "To do all acts and make all regulations necessary or expedient for the promotion of health or suppression of disease.

" "To regulate the burial of the dead, and to purchase, establish and regulate one or more cemeteries within or without the city limits.

" "To determine when it is necessary to acquire property for the use thereof by the power of eminent domain.

" '4. That on February 28, 1893, plaintiff was and had continuously been for a period of more than thirty years prior to said date, the owner of a certain tract or parcel of land in Division B, said city, according to the original plat thereof, which tract or parcel of land was, and during all of said period had continuously been, established and used by it for the purposes of a public cemetery under the following conditions and circumstances, viz:

" 'Said tract was divided into burial lots, in size 25 by 30 feet, with all necessary driveways and walks between; was adorned and beautified by shade trees, shrubs and flowers, as is usual with well managed public cemeteries; was inclosed by a substantial and well built fence, and was under the management of a certain city employe, known as the city sexton, whose duties were defined and set forth by ordinances of said city, which ordinances contained substantially the following provisions, viz:

" "The name of said cemetery, together with such additions thereto as the council might subsequently authorize, was Austin City Cemetery.

" "The city assessor and collector of taxes is required to keep among the records of his office a plat of the land embraced in said cemetery, and to sell to persons desiring same, for purpose of sepulture, burial lots, half lots, quarter lots and single grave spaces for adults or children, according to a schedule of prices fixed in said ordinance.

" 'Said cemetery was to be under the charge of the city sexton, whose duty it was to act as superintendent of same, and who was made ex officio a city policeman, with the duty of enforcing city ordinances within said cemetery, and said sexton was charged with the additional duty of performing such other services in said cemetery as the council might from time to time prescribe, and was required to execute in favor of the city a good and sufficient bond for $1000, conditioned for the prompt and faithful performance of his duties.

" 'Said sexton was to prepare properly and promptly the ground in said cemetery for the reception of bodies, was to inter all bodies prop-

erly presented to him for burial in graves at least four feet deep, was to superintend the depositing of bodies in such graves, was to refill and properly finish off the graves after burial, and was to preserve order and quiet during burials.

" 'Said sexton was to keep a register of the dead buried in said cemetery, such register to contain a statement showing the name, age, sex, color, place of birth, residence, and cause of death of all persons buried, as well as time of interment, and place where interred.

" 'Said sexton was to take care that the fences, walls, streets and other public places in said cemetery were kept in good condition and perfectly clean, and was to superintend all repairs done by private parties on their grounds, and was to have such repairs made upon the streets and other public places of the cemetery, from time to time as the council might order, and for such services was to receive pay from the city treasurer.

" 'In addition to the above duties, it was the duty of said sexton to keep the gates of said cemetery open on Sundays from 1 o'clock p. m. to 6 o'clock p. m., and to be present in the cemetery at such hours to enforce rules for the preservation of order and decorum and the protection of property.

" 'That by reason of the long continued operation of said Austin City Cemetery under the conditions and circumstances, and in accordance with the provisions of the ordinances above alleged, said cemetery had on the 28th day of February, 1893, become and was the most generally used and valuable cemetery property within the corporate limits of said city.

" '6.    That on the said last named date, defendant was and since said date has continued to be, the owner of a certain tract or parcel of land, immediately joining and contiguous to the cemetery property above mentioned, and situated within the corporate limits of the city of Austin, and particularly described as follows, viz: [Here follows a description of the property].

" '7.    That prior to said last mentioned date, said defendant wishing and intending to utilize the above described property for the purpose of a cemetery, had subdivided same into several hundred cemetery lots of 25 by 30 feet each, with necessary and convenient driveways between, and had offered said lots for sale generally to the public for the purpose of burying therein dead human bodies.

" '8.    That on said date, there was in existence and in force a valid penal ordinance, enacted by plaintiffs, prohibiting the burial of dead human bodies within certain territory embraced in the corporate limits of the city of Austin, and that the property above described was situated wholly within said territory, where the burial of human bodies was prohibited from being made by the terms of said ordinance.

" '9.    That on the 15th day of March, 1893, defendant instituted in the District Court of Travis County, Texas, a suit against the city of Austin to restrain said city from enforcing against it the provisions of

said penal ordinance, on the alleged ground that said ordinance was, as to it, void, and that the litigation thus begun was terminated by the judgment of the Supreme Court of Texas, which judgment adjudicated the issues involved in said litigation in favor of the city of Austin, and sustained the validity of said ordinance, and the power of said city to prohibit said cemetery association from maintaining a cemetery on the property above described or any part thereof.

" '10.    That after the final termination of said litigation, said cemetery association still wishing to utilize said above described property for the purpose of a public cemetery, and wishing to have the privilege of so operating same as to make it in effect an addition to the Austin City Cemetery, above mentioned, and to thereby create an additional demand and value for said property as cemetery property, and wishing also to secure for it the supervision and superintendence of the city sexton of the city of Austin, applied to the city council of the city of Austin, for permission to do so, and that in response to said application, the city council of the city of Austin, by ordinance enacted on the 18th day of March, 1895, authorized said cemetery association to establish a cemetery on said property as desired by it, provided said association would accept in writing and agree to the provisions of said ordinance. That said ordinance contained a statement of the mutually binding terms upon which said defendant was to establish and plaintiff was to permit the establishment of an addition to the previously existing Austin City Cemetery, which terms are substantially as follows, viz:

" 'Said addition was to be operated as a cemetery under the care and supervision of the city sexton, whose duties in connection with said management and supervision were to be similar to those imposed upon him by ordinance with reference to the Austin City Cemetery, as same previously existed.

" 'A certain strip of land situated in said addition was to be deeded to the plaintiff absolutely for interring its pauper dead.

" 'The driveways and streets in said addition were to be so located, arranged and constructed as to constitute them continuations and extensions of the driveways and streets in the older portion of the cemetery, and the whole property was to be inclosed in a single general inclosure or fence.

" 'Burial lots or blocks in the addition were to be of the same dimensions as those in the older portion of the cemetery.

" 'The cost of maintenance, including cost of necessary fencing, grading, culverts, and drains, was to be borne by the defendant.

" 'A plat of the land embraced in said addition was to be filed by defendant in the office of the city assessor and collector of plaintiff. Defendant was to pay all costs incurred in the case of Austin City Cemetery Association v. City of Austin; was also to pay all court costs in the case of Hill et al. v. City of Austin, which was an injunction suit to restrain the said city from further extending the limits of the Austin City Cemetery, and was to enter into bond to indemnify the city against

further cost of litigation arising because of the establishment or operation of said addition to said cemetery.

" 'That in addition to the terms imposed by and contained in said ordinance, as above alleged, it was also provided therein that the Austin City Cemetery Association should establish and maintain on its above described property a public addition to said. Austin City Cemetery, and that it should not charge more than $25 per block 25 by 30 feet in size in said addition; that a true copy of said ordinance is hereto attached, marked exhibit "A" and prayed to be taken as part of this petition.

" '11.   That on the 18th day of April, 1895, defendant by an instrument in writing filed with the city clerk of plaintiff accepted the terms and conditions imposed by said ordinance; that a true copy of said acceptance is hereto annexed, marked exhibit "B," and prayed to be taken as a part of this petition; and that on said date it did and performed all other acts prescribed by said ordinance as conditions precedent to the taking effect of said ordinance; that said ordinance thereupon and at once took effect and became a contract between plaintiff and defendant; and that the contract evidenced by said ordinance and the acceptance thereof has ever since said 18th day of April, 1895, constituted a valid and binding obligation upon both plaintiff and defendant.   The plaintiff has in each and every respect performed and caused to be performed each and every duty and obligation resting upon it by reason of said contract; and that defendant, for many years after said contract was made, observed and performed its duties thereunder; and that said addition to said Austin City Cemetery was for a period of several years immediately following the execution of said contract operated by both parties in accordance with the agreement thereby evidenced.

" '12.   That immediately prior to the date when the contract above alleged was executed the supply of unused and unsold lots in the Austin City Cemetery had become almost exhausted, and it had become necessary for the plaintiff to establish or secure the establishment of additional cemetery facilities in or conveniently accessible from said city, in order to meet the imperative needs of its people.   That all of the territory embraced in the corporate limits of said city, and all of the territory contiguous to and without said limits which could be made available for cemetery purposes, was land of a porous quality, resting on a limestone foundation, close to the surface of the ground, and more or less likely to convey from any cemeteries which might be located thereon, poisonous fluids to great distances.   That the city council of plaintiff, believing such regulations to be expedient for the promotion of health among the inhabitants of the city, has always so exercised its charter powers as to limit and restrict by ordinance the territory which might be used within said city for cemetery purposes to the smallest extent adequate to meet the requirements of the people of the city; and that the establishment and operation within the corporate limits of the city of more cemeteries than would be sufficient to accommodate the needs of the public would, because of the character of such territory,

be attended with unnecessary danger to the health of said city. That in order to make effectual its ordinances restricting and limiting the territory which might be used for cemetery purposes within said city, it is and has always been essential for plaintiff to secure to the people of the city the right of purchasing burial ground in authorized cemeteries at reasonable prices; and that the contract above alleged was made by the city council in recognition of such necessity.

" '13. That on July 10, 1901, and on divers dates prior to that date, defendant willfully and wantonly broke said contract by extorting from all persons purchasing lots in said cemetery addition a price for each lot purchased exceeding the maximum price of $25 which it is permitted to charge for a cemetery lot under the terms of its contract with this plaintiff. That the names of the persons to whom said lots were sold and the exact dates and prices of such sales are not at this time known to plaintiff, but are in each and every instance known to the defendant, and will be proven by plaintiff on the trial of this cause. That on the date last above mentioned, the officers of plaintiff expostulated with the president of defendant corporation and threatened him with public prosecution if he should continue to so violate said contract. That on or about the 1st day of September, 1901, defendant again placed its cemetery lots on the market, and since said date has sold divers of said lots to persons requiring same for the burial of their dead, and has in each and every instance charged the purchasers of said lots prices exceeding the maximum price of $25 which it is permitted by its contract with defendant to charge for a cemetery lot; all of said lots in said addition being of the size mentioned in said ordinance attached as exhibit "A."

" '14. That there are at present in said cemetery addition more than one hundred unsold lots which defendant is under the legal duty of selling to such proper persons as may apply to it for the purchase of lots at prices not to exceed $25 per lot. That unless restrained from further violating its said contract, defendant will in the future continue to violate said contract as same has by it been violated in the past, and will take advantage of the circumstances of such of the people of said city as require places for the burial of their dead to extort from them as the price of each lot sold sums ranging from $100 to $150; or will arbitrarily and without cause take all of said lots off the market and leave the people of said city without adequate or proper place for the burial of their dead. That unless the relief hereinafter prayed for be granted, the plaintiff and the people on whom said extortion will be practiced will each and all be without any remedy adequate to protect themselves from the consequences of said wrongful, unlawful and continuous breaches of contract on part of defendant.'

"The petition prayed that the defendant, its officers, agents and employes be restrained from charging, demanding or receiving, directly or indirectly, more than $25 each for lots in the cemetery addition of defendant; that said parties and each of them be restrained from refusing

to sell to any proper person a lot at said maximum price of $25 when requested to do so, and for such other and further relief that it might be entitled to under the facts alleged.

"The exhibits attached to the petition, were as follows, viz:

" 'EXHIBIT A.

" 'An ordinance authorizing the Austin City Cemetery Association to establish a cemetery in the city of Austin.

" 'Be it ordained by the city council of the city of Austin:

" 'Section 1.   That permission is hereby granted to the Austin City Cemetery Association to establish and maintain a cemetery within the city of Austin, upon the following described tract of land, viz:   [Here follows field notes of the land].

" 'Sec. 2.   That before said cemetery shall be established, said association shall convey to the city of Austin a strip of land out of said tract 25 feet in width by 1050 feet in length for the use of the city for the burial of paupers as the city council may hereafter designate.

" 'Sec. 3.   That said association shall not charge more than $25 per block of 25 feet by 30 feet in size in said cemetery.

" 'Sec. 4.   That said cemetery shall be under the care and supervision of the city sexton, and all graves in said cemetery shall be dug in accordance with the directions and requirements of the city of Austin, and the directions of the city sexton.

" 'Sec. 5.   That it shall be the duty of the said association to lay out and dedicate for the use of the public, streets and walks through said cemetery of the same dimensions as the streets and walks of the present city cemetery, and such streets and walks shall be laid out by said association so as to form extensions of the streets and walks in the present cemetery.

" 'Sec. 6.   It shall be the duty of said association to divide said tract of land into blocks of the same dimensions of the blocks in the present cemetery.

" 'Sec. 7.   That the cemetery hereby provided for shall be maintained at the expense of said association, and all necessary fences, gradings, culverts and drains shall be put in by said association at its own cost.

" 'Sec. 8.   It shall be the duty of said association within thirty days after the passage of this ordinance to file with the assessor and collector of taxes a plat of the cemetery hereby provided for, and also to file with the city clerk a written acceptance of the provisions of this ordinance.

" 'Sec. 9.   This ordinance shall not take effect until said cemetery association shall have paid all costs incurred in the case of C. F. Hill et al. against the city of Austin, pending in the District Court of Travis County, Texas, and the case of Austin City Cemetery Association against the city of Austin, pending in the Court of Civil Appeals at Austin, and shall file with the city clerk an obligation to hold the city of Austin harmless against all costs that may be incurred in suits hereafter brought by reason of the establishment of said cemetery, and also an agreement

to pay the expenses of removing the fence on the west side of the two and one-half acres of land now owned by the city of Austin and adjoining the land of said association at such time as the city may desire said fence removed sixty feet east of its present location.'

" 'Exhibit B.

" 'Austin, Texas, April 18, 1895.

" 'Mr. Milton Morris, City Clerk, Austin, Texas:

" 'Dear Sir.—The Austin City Cemetery Association hereby accepts the provisions of the ordinance passed by the city council on March 18, 1895, entitled "An ordinance authorizing the Austin City Cemetery Association to establish a cemetery in the city of Austin."

" 'This acceptance is filed in compliance with section 8 of said ordinance, by resolution of the board of directors of said Austin City Cemetery Association. Respectfully,

[Seal.]                " 'Austin City Cemetery Association,

                " 'By Otto Bergstrom, President.

" 'Attest, A. G. Covert, Secretary.'

"To this pleading of the plaintiff, the defendant, besides various special exceptions and answers, which it is unnecessary to notice here, filed a general demurrer. The general demurrer of defendant was sustained by the trial court, whereupon the plaintiff excepted and gave notice of appeal to this court.

"All the members of the Court of Civil Appeals have agreed that the trial court erred in sustaining defendant's demurrer, and that the judgment below should be reversed and the cause remanded for the following reasons:

"1. That the provisions of the charter of the city of Austin, as pleaded, authorized the city to pass an ordinance prohibiting the burial of the dead and the establishment of cemeteries within certain limits, provided said ordinance was reasonable. That the ordinance pleaded, as set out in subdivision 8 of the plaintiff's petition, which prohibits the burial of dead human bodies within certain territorial limits, was and is prima facie reasonable, so far as that fact may be determined from the averments of the plaintiff's petition.

"2. That the provisions of this ordinance do not prohibit the city from selecting places for cemeteries in which to inter the dead, nor did it prohibit the city from delegating this power to some one else, if it saw fit to do so; provided, that in neither instance would the creation of a nuisance be allowed. The averments of the petition of the exercise of the authority of the city in this respect are not to the effect that a nuisance was created by permitting the appellee corporation to use the ground described in plaintiff's petition for cemetery purposes.

"3. In view of the provisions of the charter and the ordinance pleaded in subdivision 8 of plaintiff's petition, the appellee, the cemetery association, could not, if said ordinance was and is reasonable,

establish their cemetery at the place described without first obtaining the consent of the city.

"4. That the consent of the city to establish and maintain a cemetery for the purpose of interring the dead was such a valuable right and privilege to the cemetery association as would operate as a consideration to support all the terms of the ordinance and contract, as shown in exhibits 'A' and 'B' to the plaintiff's petition, entered into between the plaintiff and the cemetery association.

"5. That the city had and has such an interest in the matter as would authorize it to maintain this action.

"In view of the public interest to some extent involved in a prompt and early decision of this case, we certify to the Supreme Court the following question:

"Assuming that the ordinance set out in subdivision 8, under the facts as pleaded, was reasonable, did the city have the authority to limit the purchase price of lots sold by the cemetery association to a sum not exceeding $25 for a block 25 feet by 30 feet; and was said stipulation and provision of the ordinance or contract entered into by the city and the association, to this extent, valid and binding upon the latter?"

We concur in the conclusion of the honorable Court of Civil Appeals that the demurrer was improperly sustained. The ordinance of the city council for the city of Austin, which prohibited the interment of dead bodies within certain limits in the said city, being reasonable and valid, the appellee had no right to use its property for that purpose, except by the consent of the city which might be given as in this case upon terms which would secure a proper regulation of the use of the property and "for the promotion of health and suppression of disease." The permission granted to the appellee to use the property for burial purposes and the supervision and protection afforded to it by the terms of the contract constitute sufficient consideration to support the agreement made by the appellee to sell its lots at prices not exceeding the sum named in the ordinance. It was within the power of the city and the appellee to make that contract, and it is valid and binding. Westfield Gas and Milling Co. v. Mendenhall, 142 Ind., 543; Cleburne W. I. and L. Co. v. City of Cleburne, 35 S. W. Rep., 733, 13 Texas Civ. App., 141.