ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

December 8, 2011

Mr. Andrew C. Hughey
General Counsel
Texas Southern University
3100 Cleburne Avenue
Houston, Texas 77004

Opinion No. GA-0894

Re: Whether Texas Southern University may exchange or grant outright a portion of its real property that contains or is adjacent to a historical cemetery (RQ-0975-GA)

Dear Mr. Hughey:

On behalf of Mr. Glenn Lewis, Chair of the Board of Regents of Texas Southern University ("TSU" or the "University"), you ask whether TSU may convey real property associated with a historic cemetery by exchange or gift.[1] Request Letter at 1. You provide us with the following background information. TSU owns three parcels of land associated with the Olivewood Cemetery in Houston. *Id.* at 1–2. The Descendents of Olivewood, a Texas nonprofit corporation (the"Corporation"), has been authorized by court order to restore, operate, and maintain the cemetery and wishes to obtain TSU property as part of a major restoration project. *Id.* at 2. Two of TSU's parcels contain graves and are dedicated cemetery lands, and the third parcel abuts the cemetery. *Id.* TSU has obtained an appraisal assessing the value of the dedicated cemetery lands as having zero value, and the adjacent property as having a value of $11,250. *Id.*

The Corporation has proposed that it donate historical papers relating to the cemetery to TSU, or grant TSU access to the cemetery for various educational purposes in exchange for TSU's three parcels of real property. *Id.* at 2–3. In light of constitutional restraints on granting state property or funds to private entities, you wish to know if TSU may convey the property to the Corporation (1) in exchange for the historical papers, (2) in exchange for a right of access to the cemetery, or (3) as a gift "to serve the greater public purpose" of historic preservation. *Id.* at 1–3.

The TSU board of regents has general statutory authority to acquire and convey land on behalf of the University. TEX. EDUC. CODE ANN. § 106.35(a) (West 2002). Property belonging to a state university such as TSU is state property. *See Walsh v. Univ. of Tex.*, 169 S.W.2d 993, 993

---

[1]*See* Letter from Mr. Andrew C. Hughey, General Counsel, Texas Southern University, to Office of the Attorney General, Opinion Committee at 1 (May 31, 2011), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

(Tex. Civ. App.—El Paso 1942, writ ref'd) (observing that property of the University of Texas is state property because the university has no existence independent of the state).

Article III, sections 51 and 52 of the Texas Constitution are complementary provisions limiting the Legislature's appropriation of public funds and resources for private purposes, either directly or by authority vested in an agency or local entity. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 740–41 (Tex. 1928) (observing that article III, sections 51 and 52 prohibit the state and its political subdivisions from gratuitously paying public funds for private purposes). Section 51 provides that the "Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever." TEX. CONST. art. III, § 51. Similarly, section 52 prohibits the Legislature from authorizing any political corporation or subdivision of the state "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." *Id.* § 52(a). Both sections 51 and 52 have been construed by the courts as "prohibiting the gratuitous disposition of the state's money, property, or contractual rights." *Rhoads Drilling Co. v. Allred*, 70 S.W.2d 576, 582 (Tex. 1934); *accord* Tex. Att'y Gen. Op. Nos. JM-1091 (1989) at 2, MW–373 (1981) at 9 (observing that while article III, section 51 expressly mentions "public funds," it also pertains to the disposition of state property and contract rights). Therefore, TSU is constitutionally prohibited from making a purely gratuitous transfer of real property to a private entity. *See Pasadena Police Officers Ass'n v. City of Pasadena*, 497 S.W.2d 388, 392–93 (Tex. Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (holding that gratuitous transfer of property rights violated article III, sections 51 and 52, among other constitutional prohibitions).

However, a transfer of property interests or rights in exchange for adequate consideration is not a gratuity. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 260 (Tex. App.—Austin 2002, pet. denied) (determining that a lease of city property for valuable consideration was not gratuitous and did not violate the comparable prohibition of article III, section 52(a)). Although you have not had the historical papers appraised, your description of the facts suggests that the papers could constitute valuable consideration that could support an exchange for the real property in question. Also, we recognize that a grant of contract rights or other covenants can constitute consideration that will support a transaction, provided it grants a right that the grantee does not already possess. *See City of Austin v. Austin City Cemetery Ass'n*, 73 S.W. 525, 529 (Tex. 1903) (determining that permission to use property as cemetery was sufficient consideration to support agreement to limit the cost of lots); *Pasadena Police Officers Ass'n*, 497 S.W.2d at 392–93 (concluding that promise to build building was consideration for transfer of public property, but modification of agreement without additional consideration was contrary to the constitution); Tex. Att'y Gen. Op. No. DM-441 (1997) at 4 (opining that a grant of city property in exchange for a university's commitment to establish a campus on the property could satisfy the requirements of article III, section 52). However, whether a donation of the historical papers or the granting of access rights constitute adequate consideration for a conveyance of the real property involves questions of fact that cannot be determined in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0298 (2005) at 3 (advising that the value of property is inherently a fact question that cannot be determined in an attorney general opinion). Instead, the adequacy of consideration is a determination for the

governing board of the granting entity to make. Tex. Att'y Gen. Op. No. GA-0706 (2009) at 2 (concerning the findings a governing body must make to make a grant that complies with article III, section 52).

You also ask if TSU may convey the property to the Corporation as a gift "to serve the greater public purpose." Request Letter at 3. The grant or transfer of public funds or resources "for a public purpose, with a clear public benefit received in return, does not amount to a . . . violation of article III, sections 51 and 52." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). Attorney general opinions have long advised that to avoid a violation of article III, sections 51 and 52, a governing body that grants funds or property that benefits a person or private entity must (1) determine that the grant serves a public purpose and (2) place sufficient controls on the transaction to ensure that the public purpose is carried out. Tex. Att'y Gen. Op. Nos. GA-0743 (2009) at 2 (discussing attorney general opinions' interpretation of article III, section 51); GA-0321 (2005) at 2–3 (concerning a lease of public property consistent with article III, section 52); GA-0084 (2003) at 7–9 (concerning a lease and conveyance of real property consistent with article III, section 52). However, a grant to benefit the public generally would not suffice; rather, the public purpose to be served by the grant must be an authorized public purpose of the granting entity. *State ex rel. Grimes Cnty. Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265–66 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd).[2] Therefore, TSU may not grant real property to a private corporation except to serve an authorized purpose of the University. Whether granting the three parcels of real property owned by TSU to the Corporation would serve a public purpose of the University is for TSU's regents to determine in the first instance. *See* Tex. Att'y Gen. Op. No. MW-373 (1981) at 9–10 (stating that whether grant of university office space rent-free to private foundation would serve a public purpose is for the university to determine in the first instance).[3]

---

[2]*See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0747 (2009) at 3–4 & n.6 (stating that under article III, sections 51 and 52, a school district's payment to a municipality must serve the public purpose of the district); MW-373 (1981) at 9 (determining that "[a]rticle III, section 51 of the constitution requires that a grant [of office space] by the university to the foundation must serve a public purpose, *appropriate to the function of a university*" (emphasis added)); JM-1255 (1990) at 3, 9–10 (municipal bond resources cannot be used to assist a school district to acquire a school building without a direct municipal purpose other than the incidental economic benefit to the community).

[3]You also ask whether, "in any case," TSU may grant by gift the two parcels of land containing the graves that were appraised as having zero value and note that the University would incur substantial costs to make such property marketable. Request Letter at 3. The special characteristics of the property are factors the Board might consider in determining the adequacy of the consideration or whether the transaction would serve a University purpose. *Cf.* Tex. Att'y Gen. Op. No. DM-268 (1993) at 2–3 (noting that an agreement to donate to a charity the county-owned personalty that is of no use or resale value to the county, thereby relieving the county of transportation and disposal costs, might serve a public purpose and constitute adequate consideration in accordance with article III, section 52).

## S U M M A R Y

Article III, sections 51 and 52 of the Texas Constitution would not prohibit Texas Southern University from conveying real property to a private entity in exchange for historical papers or a right of access to property, provided such papers or access rights constitute adequate consideration for the real property. Whether the papers or rights constitute adequate consideration is a matter for the University's governing board to determine in the first instance.

Texas Southern University may not grant real property by gift to a private corporation except to serve an authorized purpose of the University.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee