TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00127-CV






Renaissance Park and Renaissance Park Apartments, Appellants




v.



Dora Davila, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-08956-A, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 In this restricted appeal, (1) we review a no-answer default judgment rendered in favor
of appellee Dora Davila against appellants Renaissance Park and Renaissance Park Apartments
in the amount of $1,222,400. (2) Davila asserts that Renaissance was properly served with citation
pursuant to section 92.003 of the Texas Property Code. (3) Renaissance complains that service was
improper and that the pleadings and proof do not support the judgment. Because we agree that
service was improper, we will reverse and remand.


BACKGROUND

 Davila's pleadings allege that in 1997 and 1998 she lived in the Chimney Hill
Apartments, paying rent of $630 per month. During this time, Chimney Hill and Davila entered
into an oral agreement whereby Davila would pay rent of $400 per month and the apartment
manager, Ms. Jerri Landrum, who had moved in with Davila, would pay the remaining $230
directly to Chimney Hill. Chimney Hill failed to document the $230 payments and "now wants
to hold Ms. Davila responsible for those payments." Davila was never late on her $400 monthly
rent payments. Davila moved out around June or July 1998.

 In August 1998, Davila attempted to purchase a house. While in the process of
obtaining financing, her mortgage officer informed her that Chimney Hill had reported two
"lates" on her rental history. This report prevented Davila from obtaining the lowest interest rate
possible and therefore prevented her from purchasing the house. Davila otherwise had excellent
credit. Also in August, Chimney Hill instituted "eviction proceedings" against Davila.

 Davila then attempted to rent an apartment. She was thwarted when, in September,
Chimney Hill "would not give a good payment history" and indicated that "an eviction had been
filed against Ms. Davila for nonpayment of rent." Based on this information, the apartment
complex refused to rent to Davila.

 Davila sued Renaissance, alleging libel, slander, and negligence. (4) In her petition,
Davila states that Renaissance "bought the apartment complex formerly known as Chimney Hill"
but does not aver when the purchase occurred. (5) Davila's petition generally alleges that
"[d]efendants had a duty to manage the apartments, keep proper records, maintain a current and
proper payment history and provide accurate information to inquirers"; "[d]efendants failed to
comply with their duty as a reasonable and prudent apartment complex should"; and because of
"defendants' libel, slander, and negligence," she has suffered both past and future "financial
injury." (Emphasis added.) Although Davila alleges that "Chimney Hill's owner, Mr. Charles
Key was aware of the contract whereby Ms. Landrum was to pay the $230.00 per month," the
petition contains no specific allegations against Renaissance or details about Davila's relationship,
if any, with Renaissance. The record does not reflect that Key was ever employed by Renaissance
in any capacity.

 Relying on section 92.003 of the property code, (6) Davila requested that Renaissance
be served by "delivering [the citation] to on-premise manager or rent collector, Ms. Celsa
Rodriguez-or-Mr. Shariz Habib, 2201 Willow Creek Dr. Austin, Texas 78741." The citation
reflects service on Renaissance "by delivering to Jerry Landrum." Renaissance failed to respond,
and Davila moved for default judgment. The district court conducted a hearing on her motion at
which Davila testified that she could neither buy a house nor rent an apartment due to false
information provided by "Chimney Hill." Davila and her accountant presented evidence that
Davila's damages exceed $1,000,000. Based on this testimony, the district court rendered a
default judgment against Renaissance.


DISCUSSION

 Rule of appellate procedure 30 describes who may file a restricted appeal:


A party who did not participate--either in person or by counsel--in the hearing that
resulted in the judgment complained of and who did not timely file a postjudgment
motion or request for findings of fact and conclusions of law, or a notice of appeal
within the time permitted by Rule 26.1(a), may file a notice of appeal within the
time permitted by Rule 26.1(c).



Tex. R. App. P. 30. To successfully prosecute a restricted appeal, error must be apparent from
the face of the record. See Stubbs v. Stubbs, 685 S.W.2d 643, 644 (Tex. 1985); L.P.D. v. R.C.,
959 S.W.2d 728, 730 (Tex. App.--Austin 1998, pet. denied); Dolly v. Aethos Communications
Sys., Inc., 10 S.W.3d 384, 387-88 (Tex. App.--Dallas 2000, no pet.). (7) The parties join issue over
whether reversible error is apparent from the face of the record.

 By its first issue, Renaissance complains that service of process pursuant to section
92.003 of the property code is "not authorized in a tort lawsuit by a former tenant against persons
who were not her landlords."

 In a direct attack on a default judgment, there are no presumptions in favor of valid
service of process. See Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994);
Mayfield v. Dean Witter Fin. Servs., Inc., 894 S.W.2d 502, 504 (Tex. App.--Austin 1995, writ
denied); Barker CATV Constr., Inc. v. Ampro, Inc., 989 S.W.2d 789, 792 (Tex. App.--Houston
[1st Dist.] 1999, no pet.). A judgment under direct attack must be reversed unless jurisdiction
of the court to render the judgment appears on the face of the record. See McKanna v. Edgar,
388 S.W.2d 927, 928 (Tex. 1965); Mayfield, 894 S.W.2d at 504. If strict compliance is not
affirmatively shown, the service of process is invalid and has no effect. See Uvalde Country Club
v. Martin Linen Supply, Co., 690 S.W.2d 884, 885 (Tex. 1985); Barker CATV, 989 S.W.2d at
792. In order for a default judgment to withstand direct attack, strict compliance with the rules
of civil procedure relating to the manner and mode of service of citation must appear on the face
of the record. See Primate Constr., 884 S.W.2d at 152; Barker CATV, 989 S.W.2d at 792.

 The property code states:


Landlord's Agent for Service of Process


(a) In a lawsuit by a tenant under either a written or oral lease for a dwelling or
in a suit to enforce a legal obligation of the owner as landlord of the dwelling,
the owner's agent for service of process is determined according to this
section.


(b) If a written notice of the name and business street address of the company that
manages the dwelling has been given to the tenant, the management company
is the owner's sole agent for service of process.


(c) If Subsection (b) does not apply, the owner's management company, on-premise manager, or rent collector serving the dwelling is the owner's
authorized agent for service of process unless the owner's name and business
street address have been furnished in writing to the tenant.



Tex. Prop. Code Ann. § 92.003. The property code defines "tenant" as "a person who is
authorized by a lease to occupy a dwelling to the exclusion of others . . . ." Id. § 92.001(6). A
landlord is "the owner, lessor, or sublessor of a dwelling . . . ." Id. § 92.001(2).

 Renaissance argues that in order to serve it through its on-premise manager or rent
collector, Davila had to establish that she was a tenant at the time of service, that Renaissance was
her landlord, that the lawsuit relates to her lease or a legal obligation of the landlord, and that she
did not have written notice of the name and address of the management company or owner. 
Renaissance further asserts that Davila has not established any of these elements either through
her petition or by evidence produced at the hearing. Davila responds that her lawsuit is a suit "to
enforce a legal obligation of [Renaissance] as landlord of the apartments" because she sued
Renaissance for its negligent record keeping, a legal obligation of the owner as landlord of the
dwelling. Davila also argues that the service provisions of section 92.003 do not require that she
file the suit while still a tenant, that Renaissance be her landlord at the time of the lawsuit or
service, or that the lawsuit relate only to the terms of her lease. We are apparently presented with
an issue of first impression. Neither party cites any authority for its interpretation of section
92.003. (8)

 Statutory construction is a question of law. See Johnson v. City of Fort Worth, 774
S.W.2d 653, 656 (Tex. 1989). Our objective when we construe a statute is to determine and give
effect to the legislature's intent. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966
S.W.2d 482, 484 (Tex. 1998); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex.
1994). The resolution of an issue of statutory construction must begin with an analysis of the
statute. See Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). If the disputed
statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate and
the statute should be given its common meaning. See St. Luke's Episcopal Hosp. v. Agbor, 952
S.W.2d 503, 505 (Tex. 1997). The legislature's intent is determined from the plain and common
meaning of the words used. See id. (citing Monsanto Co. v. Cornerstones Mun. Util. Dist., 865
S.W.2d 937, 939 (Tex. 1993)).

 When the legislature has failed to define a specific word in a statute, courts apply
its ordinary meaning. See Monsanto Co., 865 S.W.2d at 939. Courts may not by implication
enlarge the meaning of any word in the statute beyond its ordinary meaning. See Sorokolit v.
Rhodes, 889 S.W.2d 239, 241 (Tex. 1994); Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d
129, 138 (Tex. App.--Austin 1986, writ ref'd n.r.e.). Likewise, a court is not free to formulate
forced or strained definitions for statutory terms. See Howell v. Mauzy, 899 S.W.2d 690, 704
(Tex. App.--Austin 1994, writ denied). The court must presume that every word in a statute has
been used for a purpose and that every word excluded was excluded for a purpose. See
Southwestern Bell Tel. Co. v. Public Util. Comm'n, 888 S.W.2d 921, 926 (Tex. App.--Austin
1994, writ denied) (citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981)).

 In her petition, Davila states that Renaissance's "agent for service, pursuant to Tex.
Prop. Code § 92.003, (when the tenant does not have in writing from the landlord the name and
business street address of the management company) is the on-premise manager or rent collector
serving the dwelling." Davila never affirmatively alleges that she did not receive written notice 
of the name and address of the management company or the name and address of the owner. The
property code allows service of process on the on-premise manager or the rent collector only if 
the tenant never received either notice. See Tex. Prop. Code Ann. § 92.003(b), (c). Because
strict compliance with a service-of-process statute must appear from the record, see Primate
Constr., 884 S.W.2d at 152, we hold that Davila was required to plead that she did not receive
either notice mentioned in the property code. She did not do so.

 We are further persuaded that service was ineffective because Davila does not
allege that a landlord-tenant relationship ever existed between herself and Renaissance. The
property code uses the general terms "tenant" and "landlord" and does not specify whether a
tenant must be in a landlord-tenant relationship with the landlord she sues in order to perfect
service pursuant to section 92.003. However, courts should interpret a statute to avoid an absurd
result. See Southwestern Bell Tel., 888 S.W.2d at 927. We do not believe that the legislature
meant to allow any tenant to utilize section 92.003 to serve any landlord. We hold that in order
for a tenant to serve a landlord under section 92.003 of the property code, the tenant must allege
that she had a landlord-tenant relationship with that particular landlord at some point in time. 
Because Davila did not allege that she ever had a landlord-tenant relationship with Renaissance,
service under the property code was improper. We do not decide today whether, to take
advantage of the property code's service provisions, a tenant must allege that a landlord-tenant
relationship existed at the time of service. We hold only that Davila could not serve Renaissance
under the property code because she did not allege that a landlord-tenant relationship had ever
existed between herself and Renaissance. We sustain Renaissance's first issue. Because we have
concluded that citation was improper, it is not necessary to reach Renaissance's second issue. (9)

CONCLUSION

 We reverse the judgment of the district court and remand this case to that court for
further proceedings consistent with this opinion.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: August 31, 2000

Publish

1. See Tex. R. App. P. 30.
2. There is no information in the record concerning the relationship of Renaissance Park and
Renaissance Park Apartments. They filed a joint brief stating, "Renaissance Park and Renaissance
Park Apartments now own the complex that used to be known as Chimney Hill Apartments." 
Davila's district-court petition states only that each "is a company that owns and/or is doing
business as an apartment complex located at 2201 Willow Creek Dr., Austin, Travis County,
Texas, 78741" (the address of the former Chimney Hill Apartments). We do not perceive the
interests of the two Renaissance entities to diverge and will refer to them jointly as "Renaissance."
3. See Tex. Prop. Code. Ann. § 92.003 (West 1995).
4. Davila also sued "Chimney Hill Apartments, Charles Key, and Charles Key, DBA Chimney
Hill Apartments." Key is alleged to have "owned and/or [done] business as an apartment
complex, Chimney Hill . . . ." Key and Chimney Hill Apartments filed a general denial. The
district court severed Davila's claims against Chimney Hill and Key, resulting in a final judgment
against Renaissance.
5. At the default-judgment hearing, Davila's attorney advised the court that Renaissance was
the "current owner" of the apartment complex and that Key "was the owner of Chimney Hill at
the time."
6. See Tex. Prop. Code. Ann. § 92.003(c) (in certain circumstances, on-premise manager or
rent collector may be served on behalf of dwelling's owner).
7. Davila argues that the "standard of review in setting aside a proper default judgment
pursuant to a motion for new trial was established by Craddock v. Sunshine Bus Lines, Inc., . . .
133 S.W.2d 124 (1939)" and that Renaissance "failed to present Craddock evidence to the trial
court." However, Renaissance did not file a motion for new trial but is pursuing a restricted
appeal. The Craddock test applies when a defendant who has suffered a default judgment files
a motion for new trial; the Craddock test is used to determine whether the trial court abused its
discretion in denying the motion for new trial. See Director, State Employees Workers'
Compensation Div. v. Evans, 889 S.W.2d 267, 268 (Tex. 1994).
8. In oral argument, Davila directed the Court to Exposition Apartments Co. v. Barba, 630
S.W.2d 462 (Tex. App.--Austin 1982, no writ). The issue in Exposition Apartments was whether
service was effectuated according to the terms of the property code, and the case turned on
whether service on "Mr. Thompson" was sufficient to constitute service on "Tommy Thompson"
and whether the title on the citation of "manager" strictly complied with the property code's
requirement that the "on-premise manager" be served. See 630 S.W.2d at 464-65. This Court
"assume[d], without deciding" that the property code applied. See id. at 463 n.1 (emphasis
added). Also, the appellants "evidently conced[ed]" the code's application. See id. at 465. 
Exposition Apartments thus provides little guidance in this case.
9. See Tex. R. App. P. 47.1. Renaissance argues that we should render judgment in its favor
because Davila's pleadings do not state a cause of action against Renaissance. However, because
we have determined that citation was improper, the district court never properly acquired
jurisdiction over Renaissance. See Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex. 1990) (personal
jurisdiction is dependent on citation being issued and served as required by law). In support of
its position, Renaissance directs the Court to Morales v. Dalworth Oil Co., 698 S.W.2d 772 (Tex.
App.--Fort Worth 1985, writ ref'd n.r.e.), and Rubalacaba v. Pacific/Atlantic Crop Exchange,
Inc., 952 S.W.2d 552 (Tex. App.--El Paso 1997, no writ). In neither case did the defendant
challenge service of process; rather, the only challenge was to the sufficiency of the evidence. 
See Morales, 698 S.W.2d at 774; Rubalacaba, 952 S.W.2d at 555-59.

 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: August 31, 2000

Publish

1. See Tex. R. App. P. 30.
2. There is no information in the record concerning the relationship of Renaissance Park and
Renaissance Park Apartments. They filed a joint brief stating, "Renaissance Park and Renaissance
Park Apartments now own the complex that used to be known as Chimney Hill Apartments." 
Davila's district-court petition states only that each "is a company that owns and/or is doing
business as an apartment complex located at 2201 Willow Creek Dr., Austin, Travis County,
Texas, 78741" (the address of the former Chimney Hill Apartments). We do not perceive the
interests of the two Renaissance entities to diverge and will refer to them jointly as "Renaissance."
3. See Tex. Prop. Code. Ann. § 92.003 (West 1995).
4. Davila also sued "Chimney Hill Apartments, Charles Key, and Charles Key, DBA Chimney
Hill Apartments." Key is alleged to have "owned and/or [done] business as an apartment
complex, Chimney Hill . . . ." Key and Chimney Hill Apartments filed a general denial. The
district court severed Davila's claims against Chimney Hill and Key, resulting in a final judgment
against Renaissance.
5. At the default-judgment hearing, Davila's attorney advised the court that Renaissance was
the "current owner" of the apartment complex and that Key "was the owner of Chimney Hill at
the time."
6. See Tex. Prop. Code. Ann. § 92.003(c) (in certain circumstances, on-premise manager or
rent collector may be served on behalf of dwelling's owner).
7. Davila argues that the "standard of review in setting aside a proper default judgment
pursuant to a motion for new trial was established by Craddock v. Sunshine Bus Lines, Inc., . . .
133 S.W.2d 124 (1939)" and that Renaissance "failed to present Craddock evidence to the trial
court." However, Renaissance did not file a motion for new trial but is pursuing a restricted
appeal. The Craddock test applies when a defendant who has suffered a default judgment files
a motion for new trial; the Craddock test is used to determine whether the trial court abused its
discretion in denying the motion for new trial. See Director, State Employees Workers'
Compensation Div. v. Evans, 889 S.W.2d 267, 268 (Tex. 1994).
8. In oral argument, Davila directed the Court to Exposition Apartments Co. v. Barba, 630
S.W.2d 462 (Tex. App.--Austin 1982, no writ). The issue in Exposition Apartments was whether
service was effectuated according to the terms of the property code, and the case turned on
whether service on "Mr. Thompson" was sufficient to constitute service on "Tommy Thompson"
and whether the title on the citation of "manager" strictly complied with the property code's
requirement that the "on-premise manager" be served. See 630 S.W.2d at 464-65. This Court
"assume[d], without deciding" that the property code applied. See id. at 463 n.1 (emphasis
added). Also, the appellants "evidently conced[ed]" the code's application. See id. at 465. 
Exposition Apartments thus provides little guidance in this case.
9. See Tex. R. App. P. 47.1. Renaissance argues that we should render judgment in its favor
because Davila's pleadings do not state a cause of action against Renaissance. However, becau