TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-01-00151-CV







Mark and Debbie Walker and Shell Road Golf Center, Inc., Appellants


v.


City of Georgetown, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 00-083-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING






 Mark and Debbie Walker filed suit against the City of Georgetown (the "City")
seeking a declaration that the City failed to comply with certain statutory and constitutional
provisions before entering into a lease with San Gabriel Batting Cages, to build and operate a batting
cage in San Gabriel Park. Both parties filed motions for summary judgment and the district court
granted summary judgment for the City. We will affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 The Walkers own and operate Shell Road Golf Center, Inc., a commercial driving
range in Georgetown. According to the Walkers, from its initial planning and inception, the center 
was to include a batting cage facility. In December 1999, shortly after the Walkers began
construction of a batting cage, the City signed a lease with San Gabriel Batting Cages Inc., a private
entity, to build and operate a batting cage in San Gabriel Park, a public park owned by the City. 

 San Gabriel Park is primarily a baseball park, consisting of several baseball and
softball fields. The lease covers 29,700 square feet of land, or according to the City's figures, less
than one percent of the 6,750,057 square foot park. The lease provides that San Gabriel Batting
Cages will pay $400 a month to lease the property; that it will have the option to renew the lease
after ten years; and that if the renewal option is exercised, the batting cage facility will become the
property of the City upon termination of the lease. Any fees charged by the batting facility, as well
as advertising and architectural decisions, must be approved by the director of parks and recreation. 
The City retains the right to terminate facility employees, to inspect the facility, and to approve any
proposals to sublet the property. In addition, San Gabriel Batting Cages must maintain adequate
insurance, provide safety instruction to its employees, and make available to the public annually one
hundred free passes to the facility. The lease also provides that a concession stand may be built in
conjunction with the batting cage. 

 Shortly after the City signed the lease with San Gabriel Batting Cages, the Walkers
abandoned plans to build their batting cage because they believed that they could not compete with
a "city-subsidized facility" located on "the best spot in town." The Walkers contend that by entering
into the lease with San Gabriel Batting Cages, the City failed to adhere to chapter 26 of the Texas
Parks and Wildlife Code (requiring notice and hearing when change in use contemplated for public
parkland); Texas Local Government Code sections 253.001 (requiring voter approval of sale of
public parkland) and 272.001 (requiring notice and bidding for sale of public parkland); and article
III, section 52 of the Texas Constitution (prohibiting municipalities from granting "public money or
thing of value in aid of" to individual, association, or corporation). See Tex. Const. art. III, § 52;
Tex. Parks & Wild. Code Ann. §§ 26.001-.004 (West 2002); Tex. Loc. Gov't Code Ann. §§ 253.001,
272.001 (West Supp. 2002). (1) The City concedes that it did not adhere to these provisions, but that
the provisions do not apply to a lease of parkland as opposed to the sale of parkland. The Walkers
claim that they presented their concerns at numerous city council meetings before filing suit against
the City.

 In their lawsuit, the Walkers sought a declaratory judgment that the above provisions
applied to the City's lease of land within San Gabriel Park, as well as injunctive relief and damages. 
The City filed a motion for partial summary judgment asserting that the statutory provisions did not
apply to it. The Walkers then filed a motion for partial summary judgment on the issue of liability
to which the City filed a response. The district court granted the City's motion for summary
judgment. The order granting summary judgment contained a "Mother Hubbard" clause providing
that "[a]ll relief not granted herein is DENIED."


DISCUSSION


Jurisdiction

 As a preliminary matter, we will address the City's jurisdictional arguments that we
lack appellate jurisdiction to review the district court's summary judgment because it was not a final
judgment under Lehmann v. Har-Con Corp., 39 S.W.3d 191 (Tex. 2001). We first turn to the matter
of standing which was raised by the district court on its own motion. 

 Standing is an element of a court's subject-matter jurisdiction. Texas Ass'n of Bus.
v. Texas Air Control Bd., 852 S.W.2d 440, 444-45 (Tex. 1993). As a general rule, to establish
standing, a party must demonstrate some interest peculiar to it individually and not as a member of
the general public. El Paso Cmty. Partners v. B&G/Sunrise Joint Ventures, 24 S.W.3d 620, 624
(Tex. App.--Austin 2000, no pet.). Specifically, a plaintiff has standing to sue if: (1) he has
sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful
act of which he complains; (2) there is a direct relationship between the alleged injury and the claim
to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action
has caused the plaintiff some injury in fact, either economic, recreational, environmental, or
otherwise; or (5) the plaintiff is an appropriate party to assert the public interest in the matter as well
as his own interest. Id. In the instant case, the Walkers allege that they incurred $2,355.84 in start-up and construction expenses for the batting cages at the Shell Road facility. They argue that, as
competitors of a facility unlawfully approved and subsidized by the City, they are suffering an injury
peculiar to themselves. They assert that the project was no longer economically viable because they
could not compete with a company that enjoyed the benefit of a lease of city property at below
market rates. We conclude this constitutes a sufficiently particularized injury to confer standing to
sue.

 The City also argues that the district court's grant of summary judgment was not final
because it did not dispose of all issues and parties in the case. See Lehmann, 39 S.W.3d at 205. In
support of this contention, the City points to the fact that both parties labeled their motions for
summary judgments as partial motions for summary judgment and that the final summary judgment
issued by the court contained a Mother Hubbard clause that did not expressly dispose of the Walkers'
constitutional claim against the City or their claim against George Russell, the city manager. 

 When there has been no conventional trial on the merits, as in the case of summary
judgment, a judgment is not final for purposes of appeal unless it actually disposes of every pending
claim and party. Id. The mere inclusion of a Mother Hubbard clause, that "all relief not granted
herein is denied," in a summary judgment does not indicate that the judgment is final for purpose
of appeal. Id. at 203-04. Instead, to determine whether such a judgment disposes of all claims and
parties, we turn to the record. Id. at 205-06.

 Although both the Walkers and the City labeled their summary judgment motions
partial motions, we observe that the constitutional claim was argued fully in the Walkers' motion
for summary judgment and the City's reply to their motion. Therefore, this issue was squarely before
the district court. In addition, the Walkers' motion for summary judgment was partial only in the
sense that it addressed the City's liability on the constitutional and statutory provisions, and not the
Walkers' damages. When the district court granted summary judgment in favor of the City, the issue
of the Walkers' damages became moot. As for the status of Russell, the plaintiffs' first amended
petition states: "He is sued here solely for the ancillary injunctive relief. Plaintiffs do not seek
recovery of damages or attorneys fees from him individually." Aside from a single-page answer filed
by Russell, this was the last time he was referred to in the pleadings. We conclude that the Walkers
made a judicial admission in their first amended pleading regarding the status of Russell as merely
ancillary to their claim for injunctive relief. See Holy Cross Church of God in Christ v. Wolf, 44
S.W.3d 562, 566 (Tex. 2001) (unequivocal statement in party's pleadings is binding). Thus, when
the district court rendered summary judgment in favor of the City, it also rendered judgment in favor
of Russell. In summary, after reviewing the record, we hold that the district court rendered a final
judgment for which we have appellate jurisdiction.


Standard of Review

 A party moving for summary judgment must prove the elements of its cause of action
or defense as a matter of law. Id. at 566. When both parties move for summary judgment and the
trial court grants one motion and denies the other, the reviewing court should review the summary
judgment evidence presented by both sides and determine all the questions presented. 
Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should render
such judgment as the trial court should have rendered. Id.


Chapter 26 of the Texas Parks and Wildlife Code

 By issue two, the Walkers argue that chapter 26 of the parks and wildlife code
required the City to post notice and hold a hearing before leasing the parkland in question. (2) See Tex.
Parks & Wild. Code Ann. §§ 26.001-.004. The City responds that Chapter 26 only applies when a
political subdivision is contemplating a change in use of public parkland. The Walkers reply that
the lease entails a change in use because the batting cage will convert public land into a commercial
facility operated by a private entity. The answer to this question and the other issues raised by the
Walkers on appeal is a matter of statutory construction.

 In construing a statute, our principle aim is to give effect to the Legislature's intent. 
Continental Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 398 (Tex. 2000). We
consider the plain and common meaning of the statute's words and examine the entire statute, not
only the disputed sections. Id. Furthermore, the court must presume that every word in a statute has
been used for some purpose and that every word excluded was excluded for a purpose. Renaissance
Park v. Davila, 27 S.W.3d 252, 256 (Tex. App.--Austin 2000, no pet.). "[M]atters of statutory
construction are questions of law for the court to decide rather than issues of fact." Johnson v. City
of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989).

 Section 26.001 of the parks and wildlife code provides:


§ 26.001. Protected Land; Notice of Taking



 A . . . municipality of this state may not approve any program or project that
requires the use or taking of any public land designated and used prior to the
arrangement of the program or project as a park, recreation area, scientific area,
wildlife refuge, or historic site, unless the . . . municipality, acting through its
duly authorized governing body or officer, determines that: 




 
 there is no feasible and prudent alternative to the use or taking of such land;
and 

 the program or project includes all reasonable planning to minimize harm
to the land, as a park, recreation area, scientific area, wildlife refuge, or
historic site, resulting from the use or taking.

 



 A finding required by Subsection (a) of this section may be made only after
notice and a hearing as required by this chapter. 

 The governing body or officer shall consider clearly enunciated local
preferences, and the provisions of this chapter do not constitute a mandatory
prohibition against the use of the area if the findings are made that justify the
approval of a program or project. 




Tex. Parks & Wild. Code Ann. § 26.001.


 The Second Court of Appeals construed section 26.001 in Persons v. City of Fort
Worth, 790 S.W.2d 865, 873 (Tex. App.--Fort Worth 1990, no writ). In Persons, the City of Fort
Worth undertook an expansion of the city zoo located within Forest Park. Id. at 867. The zoo,
which charged admission, occupied 31 acres of the 233-acre park. Id. Access to the park outside
the zoo was free. Id. As part of the planned expansion, the City proposed to add eleven acres of the
adjoining parkland to the zoo. Id. at 867-68. In addition, the City planned to build an exhibit
featuring Texas heritage and culture, to be housed in nine buildings; an African Savannah, World
of Rivers, and South American Exhibit; and a maintenance complex. Id. A resident sued the City
complaining that, among other things, the City had failed to comply with chapter 26. Id. at 869.

 Applying the rules of statutory construction, the court of appeals concluded that
chapter 26 was not intended to apply where the proposed change in use of public land is from one
park use to another. Id. at 875. In reaching its decision, the court reasoned that the reference in
26.001(a) to the prior use of the land as a park necessarily implied that the land would be used for
"something other than a park" after the proposed project or plan. Id. "To hold otherwise would
effectively excise these words from the statute." Id. In addition, the court focused on the language
in subsection (a)(2) which requires that a program or project include "all reasonable planning to
minimize harm to the land, as a park . . . ." Id. Again, the court concluded that this language
implied that the program or project involved a nonpark use. Id. In summary, the court stated:


We fail to see how parkland is harmed when continued to be used for a park purpose.
Parkland exists to be used for park purposes, and, of course, there are many varieties
of park uses. Chapter 26 does not categorize or prioritize these different park uses,
and nothing in the statute evidences an intent to favor one type of park over another.



Id. 

 We find the reasoning in Persons to be controlling in the instant case and hold that
the construction of batting cages on parkland consisting largely of baseball fields is not a change in
use that would invoke the notice and hearing requirements of chapter 26. To hold otherwise would
discourage the type of public-private partnership entered into here that provides public benefit. Not
only is the batting cage facility consistent with the park's current use, it complements the park's
current use as a baseball facility and expands the recreational facilities available to the public. The
Walkers' argument that the lease embodies a change in use because the batting cage will be a
commercial facility is unpersuasive. Nothing in chapter 26 speaks to the issue of whether this type
of commercial arrangement, which does not result in a change from a park to a nonpark use, is
prohibited by the statute. Absent doubt as to legislative intent, we will not read into a statute a
prohibition that is not there. See City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 753 (Tex.
App.--Austin 1998, no pet.). Moreover, our review of the Walkers' summary-judgment evidence
reveals that the City already charges the public various fees for the use of park facilities, including
fees for the rental of the park's baseball fields, basketball courts, gazebo, and parking lot. Pursuant
to the lease, the City maintains control over the fees charged for use of the batting cage. Under these
circumstances, the fact that the public will be charged a fee for use of the batting cage is not
significant. Issue two is overruled.


Chapters 253 and 272 of the Local Government Code

 The Walkers argue in issues three and four that the City failed to comply with
sections 253.001 and 272.001 of the local government code. For the Walkers to prevail we must find
that these sections apply to a lease of public land. We will address each section in turn.

 Section 253.001 in pertinent part provides:


§ 253.001. Sale of Park Land, Municipal Building Site, or Abandoned Roadway



 Except as provided by Subsection (b), the governing body of a municipality may
sell and convey land or an interest in land that the municipality owns, holds, or
claims as a public square, park, or site for the city hall or other municipal
building or that is an abandoned part of a street or alley. A sale under this
section may include the improvements on the property. 

 Land owned, held, or claimed as a public square or park may not be sold unless
the issue of the sale is submitted to the qualified voters of the municipality at an
election and is approved by a majority of the votes received at the election;
provided, however, this provision shall not apply to the sale of land or right-of-way for drainage purposes to a district, county, or corporation acting on behalf
of a county or district. 




Tex. Loc. Gov't Code Ann. §253.001(a), (b) (emphasis added). 

 The plain language of section 253.001 indicates that the Legislature intended that only
the sale of public parkland be subject to the election requirements outlined in subsection (b). 
Nowhere in subsection (b) does the term "lease" appear, or any other term of exchange aside from
the term "sale." As the City points out, the fact that the term "lease" appears elsewhere in chapter
253 of the local government code indicates that when the Legislature intended for a provision to
apply to a lease, it said so. See Tex. Loc. Gov't Code Ann. §§ 253.004 ("Grant or Lease of Property
for Juvenile Board"); .005 ("Lease of Oil, Gas, or Mineral Land"); .006 ("Lease of Municipal
Hospital or Swimming Pool"); compare .008 ("Sale of Real Property by Public Auction") (West
1999 & Supp. 2002).

 The Walkers focus on the phrase "an interest in land" in section 253.001(a). Id.
§ 253.001(a). They claim that because "an interest in land" is a legal term that includes the
conveyance of something less than fee simple title to land, e.g., a lease, subsection (b) should be read
as applying to a lease as well as a sale. However, subsection (a) simply authorizes a municipality
to sell and convey land or an interest in land in certain types of properties, including parks. Id. 
Subsection (b) restricts this general grant of authority by requiring an election when the municipality
contemplates the sale of such property. Id. (b). Had the Legislature intended for the election
requirements of subsection (b) to apply to a "lease" or an "interest in land" it could have so provided
in the statute. 

 The Walkers point us to the Fourth Court of Appeals decision in Zachry v. City of San
Antonio, 296 S.W.2d 299 (Tex. Civ. App.--San Antonio 1956), aff'd, 305 S.W.2d 558 (Tex. 1957),
as support for their argument that the lease at issue was subject to election requirements. In Zachry,
the City of San Antonio signed a forty-year lease with a private developer to build an underground
parking garage on city parkland and later successfully sought to void the lease in court. Id. at 300.
Recognizing that the City had the power to lease land and, by its charter, the implied power to
provide parking facilities, the appellate court agreed the lease was void because it ceded too much
control to a private entity. (3) Id. at 304-05. Unlike the city in Zachry, the City of Georgetown retains
substantial control in the lease at issue here. Furthermore, the decision in Zachary does not address
section 253.001. The supreme court affirmed the appellate court decision in Zachry on an entirely
different ground, holding that land dedicated as a public park could not be put to an inconsistent use.
Zachry v. City of San Antonio, 305 S.W.2d 558, 563 (Tex. 1957). The supreme court focused on the
substantial change to the surface area of the park that would be caused by construction of the
underground garage. Id. at 562-63. This included the installation of tire shops, repair shops, exit
and entrance ramps where sidewalks used to be, and the placement of escalators in the center of the
park where they would displace an existing statue. Id. at 562. In addition, the developer proposed
to remove all of the surface area of the park until construction was completed and to replant and refit
for park purposes only that portion of the surface area unused by the garage. Id. at 563. As planned,
the garage would have occupied 27,000 square feet of the 115,000 square-foot park. Id. at 562. 

 Although in its opinion the supreme court cited a former version of section 253.001
as requiring an election, it did so solely within the context that the City was contemplating a drastic
change in use for Travis Park, which at the very least required public input. Id. at 561. (4) We note that
section 253.001 is not identical to the prior law reviewed by the court. (5) Moreover, there is no
indication that the supreme court considered the question presented in the instant case: whether
section 253.001 as it existed in 1957 applied to a lease, as opposed to a sale of parkland. Having
held that the batting cages in the instant case do not represent a change in use, we find that Zachry
is inapplicable. 

 The two attorney general opinions cited by the Walkers are also distinguishable. See
Op. Tex. Att'y Gen. No. MW-471 (1982); Tex. Att'y Gen. LA-97-057 (1997). In MW-471, the
attorney general concluded that the sale of perpetual rights to timber located on public parkland in
the City of Rusk was a conveyance of an interest in land subject to the election requirements of
section 253.001. See Op. Tex. Att'y Gen. No. MW-471. The pivotal factor, as we read the opinion,
was that the disposition of the timber rights was permanent. Id. at 1646. The attorney general did
not address the question of whether a temporary lease of timber rights would invoke section 253.001. 
Letter opinion 97-057 addresses the sale, not the lease, of public parkland. See Tex. Att'y Gen. LA-97-057. In the instant case, there was no permanent disposition of land. The City of Georgetown
entered into a ten-year lease, with a ten-year renewal option, during which the City retains significant
control over the use of the property. Upon termination of the lease, if renewed, the City will acquire
the batting cages. Under these circumstances, we conclude that section 253.001 does not apply to
the City's lease of land to San Gabriel Batting Cages. Issue three is overruled.

 The Walkers additionally argue that the City was required to adhere to the notice and
bidding requirements specified in section 272.001(a) of the local government code:




 Except for the types of land and interests covered by Subsection (b), (g), (h), (i),
or (j), and except as provided by Section 253.008, before land owned by a
political subdivision of the state may be sold or exchanged for other land, notice
to the general public of the offer of the land for sale or exchange must be
published in a newspaper of general circulation in either the county in which the
land is located or, if there is no such newspaper, in an adjoining county. The
notice must include a description of the land, including its location, and the
procedure by which sealed bids to purchase the land or offers to exchange the
land may be submitted. The notice must be published on two separate dates and
the sale or exchange may not be made until after the 14th day after the date of
the second publication.




Tex. Loc. Gov't Code Ann. § 272.001(a) (emphasis added). As in the previous section, the plain
language of the statute indicates that the Legislature intended for the notice and bidding requirements
to apply to the "sale or exchange" of land, not the lease of land. The Walkers' reliance on Bowling
v. City of El Paso, 525 S.W.2d 539 (Tex. Civ. App.--El Paso 1975), aff'd, 529 S.W.2d 509, 509
(Tex. 1975), is unavailing. First, Bolwling involved an exchange, not a lease, of city-owned land for
privately-held land. Id. at 540. Second, in construing a former version of section 272.001, the
Eighth Court of Appeals concluded that an exchange of property was tantamount to a sale under the
statute, which at the time applied only to a "sale" of land. Id. at 541. The court reasoned that the
statute was meant to safeguard public land so that it would not be "disposed of for less than true
value and without knowledge by the citizens of the community." Id. The court went on to say: 


Land may be disposed of in a number of ways--by sale, exchange or gift; the statute
should be construed to cover all of these to effect its purpose of controlling the
disposal of City property . . . . Surely no one would say that the Legislature intended
that City property could be given away without notice of any kind. 



Id. (emphasis added). Similar to the attorney general's opinion in MW-471, the court was apparently
concerned with the permanent conveyance of public land represented by the exchange, as opposed
to the type of temporary lease arrangement at issue in the instant case. Moreover, since the court
handed down its decision in Bowling, the Legislature has amended the statute to apply to an
"exchange" as well as a "sale" of land. See Tex. Gov't Code Ann. 272.001(a). If, as the Walkers
argue, section 272.001 applies to all conveyances of an "interest in land," then the Legislature's act
in amending the statute was superfluous. However, the rules of statutory construction require us to
presume that any change made by the Legislature to the statute was deliberate. See Buckner Glass
& Mirror Inc. v. T. A. Pritchard Co., 697 S.W.2d 712, 714 (Tex. App.--Corpus Christi 1985, no
writ). Furthermore, each word in a statute is presumed to have been included for a purpose. 
Renaissance Park, 27 S.W.3d at 256.

 Finally, the attorney general letter opinion the Walkers cite us to in support of their
argument is inapposite. See Tex. Att'y Gen. LO-076 (1997). In that opinion, Weatherford
Community College asked whether land it proposed to sell or lease to a private foundation to build
a civic center was subject to the requirements of section 272.001. Id. The attorney general first
noted that the sale or lease of land by public entities is governed by chapter 272. Id. He then
explained that sales of public land are subject to the notice and bidding requirements of 272.001(a). 
The opinion does not address leases of public land, nor does it analyze subsection (a). Id. Instead,
the attorney general found that subsection (a) did not apply to the college because the land at issue
fell within one of the exceptions listed under subsection (b). Id.; see also Tex. Loc. Gov't Code
Ann. 272.001(b) (requiring appraisal and conveyance for fair market value for certain types of land). 
We overrule issue four.


Article III, Section 52 of the Texas Constitution

 The Walkers' first issue on appeal is that the City leased the land in San Gabriel Park
at less than fair market value in violation of article III, section 52 of the Texas Constitution. See Tex.
Const. art. III, § 52. The Walkers also argue that this provision, coupled with the statutes discussed
previously, required the City to obtain an appraisal of the property. The City maintains that article
III, section 52 applies only to gratuitous donations to private entities, and that because it leased the
land for $400.00 a month, it has not made a gratuitous donation. We agree with the City.

 Article III, section 52(a) in pertinent part provides: "Except as otherwise provided
by this section, the Legislature shall have no power to authorize any county, city, town or other
political corporation or subdivision of the State to lend its credit or to grant public money or thing
of value in aid of, or to any individual, association or corporation whatsoever . . . ." Id. The purpose
of this provision is to prevent the gratuitous transfer of public funds to any individual. Graves v.
Morales, 923 S.W.2d 754, 757 (Tex. App.--Austin 1996, no writ) (citing Edgewood Indep. Sch.
Dist. v. Meno, 893 S.W.2d 450, 473 (Tex. 1995)). However, the Constitution does not bar an
expenditure which incidentally benefits a private entity if it is made for the accomplishment of a
legitimate public purpose. Id.

 As the City points out, the lease entered into here was supported by valuable
consideration. As such, it was not a gratuitous donation of public funds or a thing of value. The sole
authority the Walkers cite in support of the proposition that the City was required to lease at fair
market value is Bowling, an opinion that simply does not address the requirements of article III,
section 52. We overrule issue one.




CONCLUSION Having overruled all the Walkers' issues on appeal, we affirm the judgment of the
district court.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Publish

1. We cite to the current code for convenience when there has been no substantive change
since the cause of action accrued.
2. According to the City's summary-judgment evidence, the parks and recreation department
discussed the batting cage proposal at several public meetings. In addition, the Walkers admit that
they attended "numerous" city council meetings at which the issue was addressed. Their complaint
is that a hearing was not held in accordance with the terms set forth in section 26.001. See Tex.
Parks & Wild. Code Ann. § 26.001 (West 2002).
3. The appellate court stated:


The lease is to Zachry, Trustee, but for whom he is trustee is not known. Zachry
agreed to erect a parking garage capable of accommodating from 900 to 1200
vehicles. But upon completion of the structure, Zachry, without the consent of
lessor, may assign the agreement and he is then completely released and
discharged from any further liability. Either Zachry, Trustee, or his assigns may
sublet the premises without consent of the City, but in such event the lessee or
the assignee will still be liable on the lease. Zachry, Trustee, is given the right
to mortgage the leasehold upon the sub-surface to the park and all the
improvements; and in the event of his default, such leasehold may be sold. The
City reserves no powers nor rights concerning the rates or policy of the
operations for forty years, but at the end of that time the property will all revert
to the City. In other words, for forty years, the City is not going to provide for
or maintain a public improvement because during all that time Zachry, Trustee,
will be providing an uncontrolled private parking business. 


 The surrender of all controls over the facility for forty years takes from the
enterprise its public nature, which is the essence of the general power upon which
the City relies. Once surrendered, it ceases to be a public improvement.


Zachry v. City of San Antonio, 296 S.W.2d 299, 303 (Tex. Civ. App.--San Antonio 1956), aff'd, 
305 S.W.2d 558 (Tex. 1957).
4. We note that a change in use to parkland would now be governed by chapter 26 of the parks
and wildlife code. See Tex. Parks & Wild. Code Ann. § 26.001.
5. See Act of March 19, 1913, 33d Leg., R.S., ch. 152, 1913 Tex. Gen. Laws, 326, 326-27
(repealed 1987) (current version at Tex. Loc. Gov't Code Ann. § 253.001).