# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00151-CV

**Mark and Debbie Walker and Shell Road Golf Center, Inc., Appellants**

**v.**

**City of Georgetown, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
### NO. 00-083-C277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING

Mark and Debbie Walker filed suit against the City of Georgetown (the ACity@) seeking a declaration that the City failed to comply with certain statutory and constitutional provisions before entering into a lease with San Gabriel Batting Cages, to build and operate a batting cage in San Gabriel Park. Both parties filed motions for summary judgment and the district court granted summary judgment for the City. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Walkers own and operate Shell Road Golf Center, Inc., a commercial driving range in Georgetown. According to the Walkers, from its initial planning and inception, the center was to include a batting cage facility. In December 1999, shortly after the Walkers began construction of a batting cage, the

City signed a lease with San Gabriel Batting Cages Inc., a private entity, to build and operate a batting cage in San Gabriel Park, a public park owned by the City.

San Gabriel Park is primarily a baseball park, consisting of several baseball and softball fields. The lease covers 29,700 square feet of land, or according to the City=s figures, less than one percent of the 6,750,057 square foot park. The lease provides that San Gabriel Batting Cages will pay $400 a month to lease the property; that it will have the option to renew the lease after ten years; and that if the renewal option is exercised, the batting cage facility will become the property of the City upon termination of the lease. Any fees charged by the batting facility, as well as advertising and architectural decisions, must be approved by the director of parks and recreation. The City retains the right to terminate facility employees, to inspect the facility, and to approve any proposals to sublet the property. In addition, San Gabriel Batting Cages must maintain adequate insurance, provide safety instruction to its employees, and make available to the public annually one hundred free passes to the facility. The lease also provides that a concession stand may be built in conjunction with the batting cage.

Shortly after the City signed the lease with San Gabriel Batting Cages, the Walkers abandoned plans to build their batting cage because they believed that they could not compete with a Acity-subsidized facility@ located on Athe best spot in town.@ The Walkers contend that by entering into the lease with San Gabriel Batting Cages, the City failed to adhere to chapter 26 of the Texas Parks and Wildlife Code (requiring notice and hearing when change in use contemplated for public parkland); Texas Local Government Code sections 253.001 (requiring voter approval of sale of public parkland) and 272.001 (requiring notice and bidding for sale of public parkland); and article III, section 52 of the Texas Constitution (prohibiting municipalities from granting Apublic money or thing of value in aid of@ to individual,

association, or corporation).  *See* Tex. Const. art. III, ' 52; Tex. Parks & Wild. Code Ann. '' 26.001-.004 (West 2002); Tex. Loc. Gov=t Code Ann. '' 253.001, 272.001 (West Supp. 2002).[1]  The City concedes that it did not adhere to these provisions, but that the provisions do not apply to a *lease* of parkland as opposed to the *sale* of parkland.  The Walkers claim that they presented their concerns at numerous city council meetings before filing suit against the City.

In their lawsuit, the Walkers sought a declaratory judgment that the above provisions applied to the City=s lease of land within San Gabriel Park, as well as injunctive relief and damages.  The City filed a motion for partial summary judgment asserting that the statutory provisions did not apply to it.  The Walkers then filed a motion for partial summary judgment on the issue of liability to which the City filed a response.  The district court granted the City=s motion for summary judgment.  The order granting summary judgment contained a AMother Hubbard@ clause providing that A[a]ll relief not granted herein is DENIED.@

**DISCUSSION**

*Jurisdiction*

As a preliminary matter, we will address the City=s jurisdictional arguments that we lack appellate jurisdiction to review the district court=s summary judgment because it was not a final judgment

---

[1] We cite to the current code for convenience when there has been no substantive change since the cause of action accrued.

3

under *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001). We first turn to the matter of standing which was raised by the district court on its own motion.

Standing is an element of a court≈s subject-matter jurisdiction. *Texas Ass≈n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). As a general rule, to establish standing, a party must demonstrate some interest peculiar to it individually and not as a member of the general public. *El Paso Cmty. Partners v. B&G/Sunrise Joint Ventures*, 24 S.W.3d 620, 624 (Tex. App.CAustin 2000, no pet.). Specifically, a plaintiff has standing to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) there is a direct relationship between the alleged injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the public interest in the matter as well as his own interest. *Id*. In the instant case, the Walkers allege that they incurred $2,355.84 in start-up and construction expenses for the batting cages at the Shell Road facility. They argue that, as competitors of a facility unlawfully approved and subsidized by the City, they are suffering an injury peculiar to themselves. They assert that the project was no longer economically viable because they could not compete with a company that enjoyed the benefit of a lease of city property at below market rates. We conclude this constitutes a sufficiently particularized injury to confer standing to sue.

The City also argues that the district court≈s grant of summary judgment was not final because it did not dispose of all issues and parties in the case. *See Lehmann*, 39 S.W.3d at 205. In

4

support of this contention, the City points to the fact that both parties labeled their motions for summary judgments as *partial* motions for summary judgment and that the final summary judgment issued by the court contained a Mother Hubbard clause that did not expressly dispose of the Walkers= constitutional claim against the City or their claim against George Russell, the city manager.

When there has been no conventional trial on the merits, as in the case of summary judgment, a judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party. *Id.* The mere inclusion of a Mother Hubbard clause, that Aall relief not granted herein is denied,@ in a summary judgment does not indicate that the judgment is final for purpose of appeal. *Id*. at 203-04. Instead, to determine whether such a judgment disposes of all claims and parties, we turn to the record. *Id*. at 205-06.

Although both the Walkers and the City labeled their summary judgment motions *partial* motions, we observe that the constitutional claim was argued fully in the Walkers= motion for summary judgment and the City=s reply to their motion. Therefore, this issue was squarely before the district court. In addition, the Walkers= motion for summary judgment was partial only in the sense that it addressed the City=s liability on the constitutional and statutory provisions, and not the Walkers= damages. When the district court granted summary judgment in favor of the City, the issue of the Walkers= damages became moot. As for the status of Russell, the plaintiffs= first amended petition states: AHe is sued here solely for the ancillary injunctive relief. Plaintiffs do not seek recovery of damages or attorneys fees from him individually.@ Aside from a single-page answer filed by Russell, this was the last time he was referred to in the pleadings. We conclude that the Walkers made a judicial admission in their first amended pleading

5

regarding the status of Russell as merely ancillary to their claim for injunctive relief.  *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (unequivocal statement in party=s pleadings is binding).  Thus, when the district court rendered summary judgment in favor of the City, it also rendered judgment in favor of Russell.  In summary, after reviewing the record, we hold that the district court rendered a final judgment for which we have appellate jurisdiction.

### *Standard of Review*

A party moving for summary judgment must prove the elements of its cause of action or defense as a matter of law.  *Id*. at 566.  When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all the questions presented.  *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).  The reviewing court should render such judgment as the trial court should have rendered.  *Id.*

### *Chapter 26 of the Texas Parks and Wildlife Code*

By issue two, the Walkers argue that chapter 26 of the parks and wildlife code required the City to post notice and hold a hearing before leasing the parkland in question.[2]  *See* Tex. Parks & Wild. Code Ann. ' ' 26.001-.004.  The City responds that Chapter 26 only applies when a political subdivision is

---

[2]  According to the City=s summary-judgment evidence, the parks and recreation department discussed the batting cage proposal at several public meetings.  In addition, the Walkers admit that they attended Anumerous@ city council meetings at which the issue was addressed.  Their complaint is that a hearing was not held in accordance with the terms set forth in section 26.001.  *See* Tex. Parks & Wild. Code Ann. ' 26.001 (West 2002).

contemplating a change in use of public parkland. The Walkers reply that the lease entails a change in use because the batting cage will convert public land into a commercial facility operated by a private entity. The answer to this question and the other issues raised by the Walkers on appeal is a matter of statutory construction.

In construing a statute, our principle aim is to give effect to the Legislature=s intent. *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, **19 S.W.3d 393, 398 (Tex. 2000). We consider the plain and common meaning of the statute=s words and examine the entire statute, not only the disputed sections.** *Id*. Furthermore, the court must presume that every word in a statute has been used for some purpose and that every word excluded was excluded for a purpose. *Renaissance Park v. Davila*, 27 S.W.3d 252, 256 (Tex. App.CAustin 2000, no pet.). A[M]atters of statutory construction are questions of law for the court to decide rather than issues of fact.@ *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989).

Section 26.001 of the parks and wildlife code provides:

**' 26.001. Protected Land; Notice of Taking**

(a) A . . . municipality of this state may not approve any program or project that requires the use or taking of any public land designated and used prior to the arrangement of the program or project as a park, recreation area, scientific area, wildlife refuge, or historic site, unless the . . . municipality, acting through its duly authorized governing body or officer, determines that:

    (1) there is no feasible and prudent alternative to the use or taking of such land; and

    (2) the program or project includes all reasonable planning to minimize harm to the land, as a park, recreation area, scientific area, wildlife refuge, or historic site, resulting from the use or taking.

(b) A finding required by Subsection (a) of this section may be made only after notice and a hearing as required by this chapter.

(c) The governing body or officer shall consider clearly enunciated local preferences, and the provisions of this chapter do not constitute a mandatory prohibition against the use of the area if the findings are made that justify the approval of a program or project.

Tex. Parks & Wild. Code Ann. ' 26.001.

The Second Court of Appeals construed section 26.001 in *Persons v. City of Fort Worth*, 790 S.W.2d 865, 873 (Tex. App.CFort Worth 1990, no writ). In *Persons*, the City of Fort Worth undertook an expansion of the city zoo located within Forest Park. *Id*. at 867. The zoo, which charged admission, occupied 31 acres of the 233-acre park. *Id*. Access to the park outside the zoo was free. *Id*. As part of the planned expansion, the City proposed to add eleven acres of the adjoining parkland to the zoo. *Id*. at 867-68. In addition, the City planned to build an exhibit featuring Texas heritage and culture, to be housed in nine buildings; an African Savannah, World of Rivers, and South American Exhibit; and a maintenance complex. *Id*. A resident sued the City complaining that, among other things, the City had failed to comply with chapter 26. *Id*. at 869.

Applying the rules of statutory construction, the court of appeals concluded that chapter 26 was not intended to apply where the proposed change in use of public land is from one park use to another. *Id*. at 875. In reaching its decision, the court reasoned that the reference in 26.001(a) to the *prior* use of the land as a park necessarily implied that the land would be used for Asomething other than a park@ after the proposed project or plan. *Id*. ATo hold otherwise would effectively excise these words from the statute.@ *Id*. In addition, the court focused on the language in subsection (a)(2) which requires that a

program or project include A all reasonable planning to minimize harm to the land, *as a park . . . .@ Id.*

Again, the court concluded that this language implied that the program or project involved a nonpark use.

*Id*. In summary, the court stated:

> We fail to see how parkland is *harmed* when continued to be used for a park purpose. Parkland exists to be used for park purposes, and, of course, there are many varieties of park uses. Chapter 26 does not categorize or prioritize these different park uses, and nothing in the statute evidences an intent to favor one type of park over another.

*Id*.

We find the reasoning in *Persons* to be controlling in the instant case and hold that the construction of batting cages on parkland consisting largely of baseball fields is not a change in use that would invoke the notice and hearing requirements of chapter 26. To hold otherwise would discourage the type of public-private partnership entered into here that provides public benefit. **Not only is the batting cage facility consistent with the park=s current use, it complements the park=s current use as a baseball facility and expands the recreational facilities available to the public. The Walkers= argument that the lease embodies a change in use because the batting cage will be a commercial facility is unpersuasive.** Nothing in chapter 26 speaks to the issue of whether this type of commercial arrangement, which does not result in a change from a park to a nonpark use, is prohibited by the statute. Absent doubt as to legislative intent, we will not read into a statute a prohibition that is not there. *See City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.3d 750, 753 (Tex. App.C Austin 1998, no pet.). Moreover, our review of the Walkers= summary-judgment evidence reveals that the City already charges the public various fees for the use of park facilities, including fees for the rental of the park=s baseball fields, basketball courts,

gazebo, and parking lot. Pursuant to the lease, the City maintains control over the fees charged for use of the batting cage. Under these circumstances, the fact that the public will be charged a fee for use of the batting cage is not significant. Issue two is overruled.

*Chapters 253 and 272 of the Local Government Code*

The Walkers argue in issues three and four that the City failed to comply with sections 253.001 and 272.001 of the local government code. For the Walkers to prevail we must find that these sections apply to a *lease* of public land. We will address each section in turn.

Section 253.001 in pertinent part provides:

' 253.001. *Sale* of Park Land, Municipal Building Site, or Abandoned Roadway

(a) Except as provided by Subsection (b), the governing body of a municipality may sell and convey land or an interest in land that the municipality owns, holds, or claims as a public square, park, or site for the city hall or other municipal building or that is an abandoned part of a street or alley. A sale under this section may include the improvements on the property.

**(b)** Land owned, held, or claimed as a public square or park *may not be sold* unless the issue of *the sale* is submitted to the qualified voters of the municipality at an election and is approved by a majority of the votes received at the election; provided, however, this provision shall not apply to *the sale of land* or right-of-way for drainage purposes to a district, county, or corporation acting on behalf of a county or district.

**Tex. Loc. Gov=t Code Ann. ' 253.001(a), (b) (emphasis added).**

The plain language of section 253.001 indicates that the Legislature intended that only the *sale* of public parkland be subject to the election requirements outlined in subsection (b). Nowhere in

subsection (b) does the term Alease@appear, or any other term of exchange aside from the term Asale.@ As the City points out, the fact that the term Alease@appears elsewhere in chapter 253 of the local government code indicates that when the Legislature intended for a provision to apply to a lease, it said so. *See* Tex. Loc. Gov=t Code Ann. '' 253.004 (AGrant or Lease of Property for Juvenile Board@); .005 (ALease of Oil, Gas, or Mineral Land@); .006 (ALease of Municipal Hospital or Swimming Pool@); *compare* .008 (ASale of Real Property by Public Auction@) (West 1999 & Supp. 2002).

The Walkers focus on the phrase Aan interest in land@ in section 253.001(a). *Id*. ' 253.001(a). They claim that because Aan interest in land@is a legal term that includes the conveyance of something less than fee simple title to land, *e.g*., a lease, subsection (b) should be read as applying to a lease as well as a sale. However, subsection (a) simply authorizes a municipality to sell and convey land or an interest in land in certain types of properties, including parks. *Id*. Subsection (b) restricts this general grant of authority by requiring an election when the municipality contemplates the sale of such property. *Id*. (b). Had the Legislature intended for the election requirements of subsection (b) to apply to a Alease@or an Ainterest in land@it could have so provided in the statute.

The Walkers point us to the Fourth Court of Appeals decision in *Zachry v. City of San Antonio*, 296 S.W.2d 299 (Tex. Civ. App.CSan Antonio 1956), *aff=d*, 305 S.W.2d 558 (Tex. 1957), as support for their argument that the lease at issue was subject to election requirements. In *Zachry*, the City of San Antonio signed a forty-year lease with a private developer to build an underground parking garage on city parkland and later successfully sought to void the lease in court. *Id*. at 300. Recognizing that the

11

City had the power to lease land and, by its charter, the implied power to provide parking facilities, the appellate court agreed the lease was void because it ceded too much control to a private entity.[3] *Id*. at 304-05. Unlike the city in *Zachr*y, the City of Georgetown retains substantial control in the lease at issue here. Furthermore, the decision in *Zachary* does not address section 253.001. The supreme court affirmed the appellate court decision in *Zachry* on an entirely different ground, holding that land dedicated as a public park could not be put to an inconsistent use. *Zachry v. City of San Antonio*, 305 S.W.2d 558, 563 (Tex. 1957). **The supreme court focused on the substantial change to the surface area of the park that would be caused by construction of the underground garage.** *Id*. **at 562-63. This**

---

[3] The appellate court stated:

> The lease is to Zachry, Trustee, but for whom he is trustee is not known. Zachry agreed to erect a parking garage capable of accommodating from 900 to 1200 vehicles. But upon completion of the structure, Zachry, without the consent of lessor, may assign the agreement and he is then completely released and discharged from any further liability. Either Zachry, Trustee, or his assigns may sublet the premises without consent of the City, but in such event the lessee or the assignee will still be liable on the lease. Zachry, Trustee, is given the right to mortgage the leasehold upon the sub-surface to the park and all the improvements; and in the event of his default, such leasehold may be sold. The City reserves no powers nor rights concerning the rates or policy of the operations for forty years, but at the end of that time the property will all revert to the City. In other words, for forty years, the City is not going to provide for or maintain a public improvement because during all that time Zachry, Trustee, will be providing an uncontrolled private parking business.
>
> The surrender of all controls over the facility for forty years takes from the enterprise its public nature, which is the essence of the general power upon which the City relies. Once surrendered, it ceases to be a public improvement.

*Zachry v. City of San Antonio*, 296 S.W.2d 299, 303 (Tex. Civ. App.CSan Antonio 1956), *aff=d,* 305 S.W.2d 558 (Tex. 1957).

included the installation of tire shops, repair shops, exit and entrance ramps where sidewalks used to be, and the placement of escalators in the center of the park where they would displace an existing statue. *Id*. at 562. In addition, the developer proposed to remove all of the surface area of the park until construction was completed and to replant and refit for park purposes only that portion of the surface area unused by the garage. *Id*. at 563. As planned, the garage would have occupied 27,000 square feet of the 115,000 square-foot park. *Id*. at 562.

Although in its opinion the supreme court cited a former version of section 253.001 as requiring an election, it did so solely within the context that the City was contemplating a drastic change in use for Travis Park, which at the very least required public input. *Id*. at 561.[4] We note that section 253.001 is not identical to the prior law reviewed by the court.[5] Moreover, there is no indication that the supreme court considered the question presented in the instant case: whether section 253.001 as it existed in 1957 applied to a *lease*, as opposed to a *sale* of parkland. Having held that the batting cages in the instant case do not represent a change in use, we find that *Zachry* is inapplicable.

---

[4] We note that a change in use to parkland would now be governed by chapter 26 of the parks and wildlife code. *See* Tex. Parks & Wild. Code Ann. ' 26.001.

[5] *See* Act of March 19, 1913, 33d Leg., R.S., ch. 152, 1913 Tex. Gen. Laws, 326, 326-27 (repealed 1987) (current version at Tex. Loc. Gov=t Code Ann. ' 253.001).

The two attorney general opinions cited by the Walkers are also distinguishable. *See* Op. Tex. Att=y Gen. No. MW-471 (1982); Tex. Att=y Gen. LA-97-057 (1997). In MW-471, the attorney general concluded that the *sale* of *perpetual* rights to timber located on public parkland in the City of Rusk was a conveyance of an interest in land subject to the election requirements of section 253.001. *See* Op. Tex. Att=y Gen. No. MW-471. The pivotal factor, as we read the opinion, was that the disposition of the timber rights was permanent. *Id*. at 1646. The attorney general did not address the question of whether a temporary lease of timber rights would invoke section 253.001. Letter opinion 97-057 addresses the *sale*, not the *lease*, of public parkland. *See* Tex. Att=y Gen. LA-97-057. In the instant case, there was no permanent disposition of land. The City of Georgetown entered into a ten-year lease, with a ten-year renewal option, during which the City retains significant control over the use of the property. Upon termination of the lease, if renewed, the City will acquire the batting cages. Under these circumstances, we conclude that section 253.001 does not apply to the City=s lease of land to San Gabriel Batting Cages. Issue three is overruled.

The Walkers additionally argue that the City was required to adhere to the notice and bidding requirements specified in section 272.001(a) of the local government code:

(a) Except for the types of land and interests covered by Subsection (b), (g), (h), (i), or (j), and except as provided by Section 253.008, before land owned by a political subdivision of the state may be *sold or exchanged* for other land, notice to the general public of the offer of the land for *sale or exchange* must be published in a newspaper of general circulation in either the county in which the land is located or, if there is no such newspaper, in an adjoining county. The notice must include a description of the land, including its location, and the procedure by which sealed bids *to purchase* the land or offers *to exchange* the land may be submitted. The notice

14

must be published on two separate dates and the *sale or exchange* may not be made until after the 14th day after the date of the second publication.

Tex. Loc. Gov=t Code Ann. ' 272.001(a) (emphasis added). As in the previous section, the plain language of the statute indicates that the Legislature intended for the notice and bidding requirements to apply to the Asale or exchange@ of land, not the lease of land. The Walkers= reliance on *Bolling v. City of El Paso*, 525 S.W.2d 539 (Tex. Civ. App.CEl Paso 1975), *aff=d*, 529 S.W.2d 509, 509 (Tex. 1975), is unavailing. First, *Bolling* involved an *exchange*, not a lease, of city-owned land for privately-held land. *Id*. at 540. Second, in construing a former version of section 272.001, the Eighth Court of Appeals concluded that an exchange of property was tantamount to a sale under the statute, which at the time applied only to a Asale@ of land. *Id*. at 541. The court reasoned that the statute was meant to safeguard public land so that it would not be Adisposed of for less than true value and without knowledge by the citizens of the community.@ *Id*. The court went on to say:

Land may be *disposed* of in a number of waysCby *sale, exchange or gift*; the statute should be construed to cover all of these to effect its purpose of controlling the *disposal* of City property . . . . Surely no one would say that the Legislature intended that City property could be *given away* without notice of any kind.

*Id*. (emphasis added). Similar to the attorney general=s opinion in MW-471, the court was apparently concerned with the *permanent* conveyance of public land represented by the exchange, as opposed to the type of temporary lease arrangement at issue in the instant case. Moreover, since the court handed down its decision in *Bolling*, the Legislature has amended the statute to apply to an Aexchange@ as well as a Asale@ of land. *See* Tex. Gov=t Code Ann. 272.001(a). If, as the Walkers argue, section 272.001 applies to all

15

conveyances of an Ainterest in land,@ then the Legislature=s act in amending the statute was superfluous. However, the rules of statutory construction require us to presume that any change made by the Legislature to the statute was deliberate. *See Buckner Glass & Mirror Inc. v. T. A. Pritchard Co.*, 697 S.W.2d 712, 714 (Tex. App.CCorpus Christi 1985, no writ). Furthermore, each word in a statute is presumed to have been included for a purpose. *Renaissance Park*, 27 S.W.3d at 256.

Finally, the attorney general letter opinion the Walkers cite us to in support of their argument is inapposite. *See* Tex. Att=y Gen. LO-076 (1997). In that opinion, Weatherford Community College asked whether land it proposed to sell or lease to a private foundation to build a civic center was subject to the requirements of section 272.001. *Id.* The attorney general first noted that the sale or lease of land by public entities is governed by chapter 272. *Id.* He then explained that sales of public land are subject to the notice and bidding requirements of 272.001(a). The opinion does not address leases of public land, nor does it analyze subsection (a). *Id.* Instead, the attorney general found that subsection (a) did not apply to the college because the land at issue fell within one of the exceptions listed under subsection (b). *Id.*; *see also* Tex. Loc. Gov=t Code Ann. 272.001(b) (requiring appraisal and conveyance for fair market value for certain types of land). We overrule issue four.

16

*Article III, Section 52 of the Texas Constitution*

The Walkers= first issue on appeal is that the City leased the land in San Gabriel Park at less than fair market value in violation of article III, section 52 of the Texas Constitution. *See* Tex. Const. art. III, ' 52. The Walkers also argue that this provision, coupled with the statutes discussed previously, required the City to obtain an appraisal of the property. The City maintains that article III, section 52 applies only to gratuitous donations to private entities, and that because it leased the land for $400.00 a month, it has not made a gratuitous donation. We agree with the City.

Article III, section 52(a) in pertinent part provides: AExcept as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .@ *Id*. The purpose of this provision is to prevent the gratuitous transfer of public funds to any individual. *Graves v. Morales*, 923 S.W.2d 754, 757 (Tex. App.CAustin 1996, no writ) (citing *Edgewood Indep. Sch. Dist. v. Meno*, 893 S.W.2d 450, 473 (Tex. 1995)). However, the Constitution does not bar an expenditure which incidentally benefits a private entity if it is made for the accomplishment of a legitimate public purpose. *Id*.

As the City points out, the lease entered into here was supported by valuable consideration. As such, it was not a gratuitous donation of public funds or a thing of value. The sole authority the Walkers cite in support of the proposition that the City was required to lease at fair market value is *Bolling*, an opinion that simply does not address the requirements of article III, section 52. We overrule issue one.

## CONCLUSION

17

Having overruled all the Walkers= issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   July 26, 2002

Publish