ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 9, 2007

The Honorable D. Matt Bingham
Smith County Criminal District Attorney
Smith County Courthouse
100 North Broadway, 4th Floor
Tyler, Texas 75702

Opinion No. GA-0553

Re: Whether a county may constitutionally contract under Local Government Code section 351.061 to provide a nongovernmental association with a constable office's law-enforcement services provided the contract (1) allows the constable to retain control and supervision of the constable's officers and (2) does not obligate the constable to assign officers to devote any portion of their working time to the nongovernmental association (RQ-0559-GA)

Dear Mr. Bingham:

You ask whether, under Local Government Code section 351.061, a county may constitutionally contract to provide a nongovernmental association with a constable office's law-enforcement services if the contract (1) allows the constable to retain control and supervision of the constable's officers and (2) does not oblige the constable to assign officers to devote any portion of their working time to the nongovernmental association.[1]

I. Background

You relate that a Smith County constable proposed a contract to the commissioners court whereby the county would provide constable law-enforcement services to a private entity, an apartment complex, for a fee. See Request Letter, supra note 1, at 2.[2] You state that the proposed contract is based on "the ostensible authority of section 351.061 of the Local Government Code," which concerns fee-based law-enforcement services. Request Letter, supra note 1, at 1–2. From your review of two prior attorney general opinions, JM-57 and JM-509, you advised that section 351.061 of the Local Government Code is unconstitutional, and any agreement to provide fee-based

---

[1]See Letter from Honorable D. Matt Bingham, Smith County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Dec. 22, 2006) (on file with the Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]See also Exhibit A attached to Request Letter, supra note 1, at 1–6 (proposed contract) [hereinafter Exhibit A].

county law-enforcement services to a private entity would be void. *See id.* at 3–7.[3]  In Attorney General Opinions JM-57 and JM-509, this office addressed county authority to provide law enforcement to private entities by contract, voicing concerns about the constitutionality of such contracts under Texas Constitution article III, section 52 (prohibiting certain public grants to private entities) and article III, section 1 (prohibiting certain delegations of legislative power).  *See generally* Tex. Att'y Gen. Op. Nos. JM-509 (1986), JM-57 (1983); *see also* TEX. CONST. art. III, §§ 1, 52.

After you advised the commissioners court against the proposed contract, you learned that it was "basically identical" to contracts used in other Texas counties. *See* Request Letter, *supra* note 1, at 2.  Of particular interest, the proposed contract provides:

> The Constable shall retain control and supervision of the officers performing services under this agreement to the same extent as he does other officers[; the nongovernmental entity] understands and agrees that this Agreement is not intended, nor shall it be construed, to obligate the Constable to assign officers to devote any portion of their working time to the area.  If the [nongovernmental entity] is dissatisfied in any way with the performance of the County, the Constable or their officers under this Agreement, [the nongovernmental entity's] sole remedy is termination . . . .

*Id.* at 2–3; *see also* Exhibit A, *supra* note 2, at 2 (section 2.3).  You ask whether such a provision would obviate the constitutional concerns identified in JM-57 and JM-509.  *See* Request Letter, *supra* note 1, at 7.  While in general we do not construe particular contracts, we may address broad principles of law applicable to a public entity's contracting authority.  *See generally* Tex. Att'y Gen. Op. No. GA-0176 (2004) at 2 (attorney general opinions do not construe contracts, but may "address a public entity's authority to agree to a particular contract term, if the question can be answered as a matter of law").

## II.     Chapter 351, Subchapter D of the Local Government Code

To address the constitutionality of section 351.061, we must first examine the terms of the Legislature's grant of authority in that section and related provisions in chapter 351, subchapter D of the Local Government Code.  Section 351.061 provides: "To protect the public interest, the commissioners court of a county may contract with a nongovernmental association for the provision of law enforcement services by the county on a fee basis in the geographical area represented by the association."  TEX. LOC. GOV'T CODE ANN. § 351.061 (Vernon 2005).[4]  The fee must be paid to the county generally rather than to any particular office or officer.  *See id.* § 351.062(b).  The

---

[3]*See also* Exhibit B attached to Request Letter, *supra* note 1, at 1– 6 (legal memorandum to commissioners court dated Sept. 22, 2006) [hereinafter Exhibit B].  You inform us that the commissioners court waived any privilege concerning your legal memorandum.  *See* Request Letter, *supra* note 1, at 2.

[4]The Local Government Code does not define "nongovernmental association."  However, the exact meaning of that term has no bearing on the constitutional questions you pose.

commissioners court may request the sheriff, a constable, or another county law-enforcement official to provide the services, limited to "the geographical area for which the official was elected or appointed." *Id.* § 351.063. If the official agrees to provide the services by using deputies, the official "retains authority to supervise the deputies who provide the services and, in an emergency, may reassign the deputies to duties other than those to be performed under the contract." *Id.* § 351.064(a). Such a deputy remains a county employee, and must "perform duties under the contract in the same manner as if the deputy were performing the duties in the absence of the contract." *Id.* § 351.064(b)–(c).

## III.    Article III, Section 52 of the Texas Constitution

Attorney General Opinion JM-57, which opined broadly that a "county may not contract with a homeowners association to provide law-enforcement protection by county peace officers," was issued prior to the enactment of Local Government Code section 351.061. Tex. Att'y Gen. Op. No. JM-57 (1983) at 7; *see id.* at 1 (stating that "no statute extant . . . purports to authorize such contracts"); *see also* TEX. LOC. GOV'T CODE ANN. §§ 351.061–.067 (Vernon 2005) (subchapter D); Act of May 20, 1985, 69th Leg., R.S., ch. 219, § 1, 1985 Tex. Gen. Laws 1082, 1082–83 (promulgating article 1581b-2, of the Revised Civil Statutes); Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, secs. 351.061–.067, 1987 Tex. Gen. Laws 707, 1146–47 (recodifying article 1581-2's provisions into the Local Government Code as chapter 351, subchapter D). As you note, however, the opinion raises public policy concerns and questions the constitutionality of such contracts under article III, section 52(a) of the Texas Constitution. *See* Request Letter, *supra* note 1, at 4–5; Tex. Att'y Gen. Op. No. JM-57 (1983) at 6.[5]

Article III, section 52(a) prohibits the Legislature from authorizing a county or other political subdivision "to lend its credit or to grant public money or thing of value." *See* TEX. CONST. art. III, § 52(a); *see also Grimes v. Bosque County*, 240 S.W.2d 511, 514 (Tex. Civ. App.—Waco 1951, writ ref'd n.r.e.) (holding that article III, section 52 of the Texas Constitution prohibits a commissioners court from making an expenditure solely to benefit an individual). The provision prohibits "*gratuitous* payments to individuals, associations, or corporations." *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002). A political subdivision's conveyance of a thing of value "is not 'gratuitous' if the political subdivision receives return consideration." *Id.*; *see also* Tex. Att'y Gen. Op. No. GA-0480 (2006) at 2 (stating that article III, section 52(a) "is not violated if the public receives consideration for granting a thing of value").

Moreover, article III, section 52(a)'s purpose is "to prevent the application of public [property] to private purposes." *Byrd v. City of Dallas*, 6 S.W.2d 738, 740 (Tex. 1928). But an expenditure that incidentally benefits a private entity is not unconstitutional if it is made to

---

[5]The specific concern addressed in Attorney General Opinion JM-57 in the context of article III, section 52(a) was whether a fee-based contract for county law-enforcement services would adequately compensate a county for the "county's name, special authority, and . . . 'good will.'" *See* Tex. Att'y Gen. Op. No. JM-57 (1983) at 6. This office issued Opinion JM-57 prior to the Texas Supreme Court's formulation of the three-part test for article III, section 52(a).

accomplish a legitimate public purpose. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 260 (Tex. App.—Austin 2002, pet. denied). The public-purpose exception is satisfied if (1) the predominant purpose is to accomplish a public purpose, rather than benefit a private party; (2) the public entity retains sufficient control to ensure accomplishment of the public purpose; and (3) the public receives a return benefit. *See Tex. Mun. League*, 74 S.W.3d at 384.

State law independent of any contract establishes a county's authority to provide law-enforcement services anywhere in the jurisdiction of its officers. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. arts. 2.12(1)–(2) (Vernon Supp. 2006) (establishing sheriffs, constables, and their deputies as peace officers); 2.13 (Vernon 2005) (imposing duty on "every peace officer to preserve the peace within the officer's jurisdiction"); 2.17 (designating sheriff as the conservator of the peace in the sheriff's county). Thus, it is difficult to envision a contract to provide such services to a private entity in which the public purpose predominates. However, we cannot conclude as a matter of law that no contract under section 351.061 could make the accomplishment of a public purpose its predominant purpose. Chapter 351, subchapter D does not on its face violate article III, section 52(a) of the constitution.

Nevertheless, we stress that to comply with article III, section 52(a), a commissioners court authorizing a contract under section 351.061 must determine, subject to judicial review, issues of the contract's purpose, governmental controls, and governmental benefit. *See* TEX. LOC. GOV'T CODE ANN. § 351.061 (Vernon 2005) (granting commissioners courts authority to contractually provide county law-enforcement services "[t]o protect the public interest"); *see also* Tex. Att'y Gen. Op. Nos. GA-0480 (2006) at 2–3 (advising that sheriff has discretion to allow deputies to use county law-enforcement vehicles during off-duty employment consistently with article III, section 52(a) of the constitution, subject to judicial review), GA-0088 (2003) at 5–6 (determining that article III, section 52(a) requires a commissioners court to determine in good faith that a grant serves a public purpose and to place sufficient controls on the transaction so that the purpose is carried out).

## IV.    Article III, Section 1 of the Texas Constitution

In Attorney General Opinion JM-509, this office determined that (1) article 1581b-2 of the Revised Civil Statutes—the predecessor of chapter 351, subchapter D—delegated legislative discretion to a private entity to control the deployment of law-enforcement resources and (2) such a delegation violated the nondelegation principles expressed in article III, section 1 of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. JM-509 (1986) at 2.[6] The Supreme Court of Texas has explained that under article III, section 1, the Legislature may delegate authority to a private entity only if there is protection against the entity's arbitrary exercise of power. *See Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998). The court has distilled eight factors that are pertinent to the

---

[6]Attorney General Opinion JM-509 also concluded that article 1581b-2 was a delegation in violation of the separation of powers provision in article II, section 1 of the Texas Constitution. *See* Tex. Att'y Gen. Op. No. JM-509 (1986) at 4. The Supreme Court of Texas has since explained, however, that the constitutional prohibition against delegating governmental authority to a private entity does not derive from article II, section 1 of the Texas Constitution. *See Proctor v. Andrews*, 972 S.W.2d 729, 732–33 (Tex. 1998). Rather, the court instructed that a purported delegation of governmental authority to a private entity should be analyzed under article III, section 1 of the constitution. *See id.* at 733.

constitutionality of a delegation to a private entity, including the availability of meaningful review of the private delegate's decisions, the potential for conflict between the delegate's personal interest and its public function, and the existence of sufficient legislative standards to guide the private delegate. *See id.*; *see also Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997).

But before it is necessary to examine a statute under *Boll Weevil* standards, it first must be determined whether the statute in fact delegates power to a private entity. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 654 (Tex. 2004). In JM-509 this office construed article 1581b-2 of the Revised Civil Statutes as necessarily allowing "a private association to control the sheriff's discretion to deploy his deputies." Tex. Att'y Gen. Op. No. JM-509 (1986) at 2. The opinion further explained:

> Under a contract authorized by article 1581b-2 . . . a nongovernmental body could insist that deputies assigned to patrol its property remain there, even if the public interest would be better served by their deployment elsewhere. The statute is not a legislative limit on the sheriff's discretion, but a legislative attempt to authorize a private entity to control the sheriff's discretion. . . . No statutory controls are included to insure that contracts for law enforcement services will carry out the stated purpose of protecting the public interest.

*Id.* at 4. If chapter 351, subchapter D of the Local Government Code is necessarily construed as delegating unbridled authority to a private entity to control the law-enforcement official's discretion to deploy deputies, then undoubtedly the statute would not satisfy the constitutional standards of *Boll Weevil. See Boll Weevil*, 952 S.W.2d at 472. But when possible, courts "interpret legislative enactments in a manner to avoid constitutional infirmities." *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). A court would likely choose a construction of chapter 351, subchapter D that renders it constitutional and determine that the statutes do not authorize a county to cede its law-enforcement discretion to deploy deputies to a private entity.

We conclude that chapter 351, subchapter D of the Local Government Code does not on its face violate either article III, section 52(a) or article III, section 1 of the Texas Constitution. But a contract under the subchapter must comport with the limitations in both constitutional provisions. A contract provision that retains control and supervision of officers in the constable and that imposes no obligation on officers to devote their working time on a particular area does not appear to be inconsistent with the constitutional principles discussed above. *See* Request Letter, *supra* note 1, at 2–3; *see also* Exhibit A, *supra* note 2, at 2 (section 2.3). We reiterate, however, that we do not purport to construe the proposed contract. Moreover, we caution that because a contract is construed as a whole, the mere inclusion of such a provision in a contract under 351.061 of the Local Government Code is not a guarantee of the contract's constitutionality. *Cf. Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (holding that contracts are construed as a whole, and no single contractual provision will be given controlling effect).

## S U M M A R Y

Under chapter 351, subchapter D of the Local Government Code, a county may contract to provide law-enforcement services to a nongovernmental association on a fee basis, provided the contract does not violate article III, section 52(a) or article III, section 1 of the Texas Constitution.  Under article III, section 52(a) the commissioners court must determine, in the first instance, that (1) the contract has as its predominant purpose the accomplishment of a public, rather than a private, purpose; (2) the public entity retains sufficient control to ensure accomplishment of the public purpose; and (3) the public receives a return benefit.

To comply with article III, section 1 of the constitution, a contract must not cede county law-enforcement discretion to the nongovernmental association.

Attorney General Opinions JM-57 (1983) and JM-509 (1986) are overruled to the extent that they are inconsistent with this opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee