

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 25, 2008

Mr. Steve Peña, Presiding Officer
Brazos River Authority
Post Office Box 7555
Waco, Texas 76714-7555

Opinion No. GA-0599

Re: Whether the Brazos River Authority may discount and freeze current lease rates for lessees over 65 years of age (RQ-0611-GA)

Dear Mr. Peña:

You explain that "[t]he Brazos River Authority (the 'BRA') owns substantial property surrounding Possum Kingdom Lake, and much of that property is subject to long-term residential leases to private individuals."[1] You state that the leases have traditionally "reflected very low lease rates" but that the BRA recently began "a process of transitioning to lease rates that more accurately reflect current market value." Request Letter, *supra* note 1, at 1. In order "to minimize the adverse impact" on certain lessees, you explain that the BRA proposes "to grant a ten percent (10%) discount off of current lease rates for lessees over 65 who would qualify for a homestead exemption,[2] and also to freeze the discounted lease rate for such lessees on a going-forward basis."[3] *Id.* (footnotes added). You ask whether the BRA "is authorized to give such a lease rate discount and lease rate freeze" and,

---

[1]*See* Letter from Steve Peña, Presiding Officer, Brazos River Authority, to Honorable Greg Abbott, Attorney General of Texas (July 30, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]We understand your reference to a person "who would qualify for a homestead exemption" to mean a person who qualifies for such an exemption under article VIII, section 1-b of the Texas Constitution, in relation to some taxing unit and is listed as such on the appraisal rolls obtained by the BRA from the applicable appraisal district. *See* TEX. CONST. art. VIII, § 1-b; BRAZOS RIVER AUTHORITY, BOARD OF DIRECTORS, AUDIO MEETINGS MINUTES, Meetings on Jan. 29, 2007, Possum Kingdom Committee, Agenda Item 7: Senior Homestead Discount, *available at* http://www .brazos.org/boardAudioMinutes.asp (last visited Jan. 22, 2008).

[3]You explain the reasons for offering the discount and freeze to this group of lessees as follows:

Rate increases have a disproportionate adverse impact on lessees over the age of sixty-five (65), who are more likely to live on fixed incomes. In addition, many of the over-65 lessees have held their leases for decades, resulting in the benefit of stable occupancy and use of the property and administrative continuity for the [BRA] regarding those leases. The [BRA] is also concerned that if the over-65 lessees are forced to leave due to higher lease rates, their departure will be a loss to the Possum Kingdom community.

Request Letter, *supra* note 1, at 1.

in particular, whether the discount or freeze violates article III, section 52 of the Texas Constitution.[4] *Id.*

In regard to your first question, no statutory or constitutional provision specifically authorizes the BRA to lease its property under the terms you describe. We assume for the purposes of this opinion that the leases will be executed under the BRA's general authority to lease its real property. We begin then with an examination of such lease authority to determine whether it precludes the proposed discount and freeze.[5]

The BRA is what is commonly referred to as a "special law district" governed not only by its enabling legislation but also certain general laws applicable to water districts. *See* TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, TEXAS WATER DISTRICTS: A GENERAL GUIDE, at 1–2 (Dec. 2004), *available at* http://www.tceq.state.tx.us/files/gi-043.pdf_4009260.pdf (last visited Jan. 22, 2008); 45 JEFF CIVINS ET AL., TEXAS PRACTICE: ENVIRONMENTAL LAW § 2.18 (2d ed. 2005).

There are two provisions in the BRA's enabling legislation that expressly authorize the BRA to lease its property. *See* TEX. SPEC. DIST. CODE ANN. §§ 8502.012(f), .013(d) (Vernon 2007). Section 8502.013(d) relates to the lease of "property used or to be used by [a] customer for the transmission of or in connection with [hydroelectric] power purchased or to be purchased from the authority" and does not appear to be applicable here. *Id.* § 8502.013(d).

Section 8502.012(f) more broadly provides that the BRA may,

> acting through the board, . . . *lease* or sell, *on terms and conditions, including rentals* or sales prices, *on which the parties agree,* all works, improvements, facilities, plants, buildings, structures, equipment, and appliances, and all real and personal property, or any interest in real or personal property, related to the works, improvements, facilities, plants, buildings, structures, equipment, and appliances, that are incident to or necessary in carrying out or performing any power or function of the authority under this section [8502.012].

*Id.* § 8502.012(f) (emphasis added); *but see id.* § 8502.013(a)–(b) (generally prohibiting the BRA from encumbering its real property and from allowing its property to come into the ownership or control of other persons).

---

[4]We assume for the purposes of this opinion that the lease arrangements you ask about actually constitute leases. *See* Tex. Att'y Gen. Op. No. GA-0252 (2004) at 8; Tex. Att'y Gen. LO-96-053, at 3 (explaining that, depending upon the terms of the lease, a lease arrangement may actually constitute a permanent disposition of land).

[5]We do not understand you to ask and we do not determine whether the BRA is authorized to lease its real property to private persons for residential purposes. *See* TEX. CONST. art. XVI, § 59; *Deason v. Orange County Water Control & Improvement Dist.,* 244 S.W.2d 981, 984 (Tex. 1952) ("The Legislature can only grant [a] district such powers and rights as come within the contemplation or provisions of the articles of the Constitution" under which it is organized).

As to general laws that address the BRA's leasing authority, we look to chapter 49 of the Water Code. *See id.* § 8502.001(b) ("The authority is created under and is essential to accomplish the purposes of Section 59, Article XVI, Texas Constitution."); TEX. WATER CODE ANN. §§ 49.001(a)(1) (Vernon Supp. 2007) (defining "district" to include an authority created under article XVI, section 59 of the Texas Constitution), 49.002(a) (Vernon 2000) (establishing applicability of chapter 49).[6] Section 49.225 of the Water Code provides that a "district may lease any of its property, real or personal, to any person" and the "lease *may contain the terms and provisions that the board determines to be advantageous to the district.*" TEX. WATER CODE ANN. § 49.225 (Vernon 2000) (emphasis added); *see also id.* § 49.002(a) (providing that chapter 49 applies to special law districts, like the BRA, to the extent that its provisions do not directly conflict with the district's enabling legislation); TEXAS NATURAL RESOURCE CONSERVATION COMMISSION, A HANDBOOK FOR BOARD MEMBERS OF WATER DISTRICTS IN TEXAS, at 5 (4th ed. June 1996), *available at* http://www.tceq.state.tx.us/files/rg-238.pdf_4006010.pdf (last visited Jan. 22, 2008) ("Subject to federal tax law restrictions, a district may lease any of its property to any person under whatever terms the board considers advantageous.").

In sum, the general leasing authority contained in the BRA's enabling legislation and chapter 49 of the Water Code does not preclude the discount or freeze about which you ask. And we find no other statutory provision that specifically prohibits these lease terms.

Next, we consider the potential constitutional limitation you raise. *See* Request Letter, *supra* note 1. In your second question, you inquire about the propriety of a lease discount and freeze under article III, section 52 of the Texas Constitution, which provides in relevant part that:

> Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, . . . .

TEX. CONST. art. III, § 52(a); *see also* TEX. SPEC. DIST. CODE ANN. § 8502.001(a) (Vernon 2007) ("The authority is a river authority, a governmental agency, a municipality, and a body politic and corporate.").

Article III, section 52(a) does not bar all transactions between a political subdivision and private persons. An expenditure that directly accomplishes a legitimate purpose of a political subdivision may still be valid even when it incidentally benefits a private interest. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 260 (Tex. App.—Austin 2002, pet. denied) (considering challenge to municipal real property lease under article III, section 52). Rather, the purpose of this provision is to prevent the gratuitous grant of public funds for a private purpose. *See Edgewood Indep. Sch.*

---

[6]There are other general law provisions that may authorize the BRA to lease its property but none appear to be applicable here. *See, e.g.,* TEX. PARKS & WILDLIFE CODE ANN. § 25.005 (Vernon 2002) (relating to lease of water-related park areas).

*Dist. v. Meno*, 917 S.W.2d 717, 739–40 (Tex. 1995). The Texas Supreme Court has held that "[a] political subdivision's paying public money is not 'gratuitous' if the political subdivision receives return consideration." *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Worker's Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002); *see also San Antonio River Auth. v. Shepperd*, 299 S.W.2d 920, 928 (Tex. 1957) (involving a contractual transfer of tax money from a county to a river authority in return for the authority's construction of flood control facilities for the benefit of the county and holding that the contract did not violate article III, section 52(a)).

Additionally, the court has established a three-part test to determine when a statute accomplishes a public purpose as required by article III, section 52(a): (1) the predominant purpose of a statute requiring a public expenditure must be to accomplish a public purpose, not to benefit private parties; (2) the statute must impose public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and, (3) the statute must ensure that the political subdivision receives a return benefit. *See Tex. Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 384. Similar principles are used to analyze whether the grant of a public thing of value—such as a lease—by a political subdivision serves a public purpose. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-0252 (2004) at 7.

With this understanding of article III, section 52(a)'s prohibition, we turn to your question—whether the proposed "discount or freeze would violate the provisions of article III, section 52 of the Texas Constitution." Request Letter, *supra* note 1, at 1. We cannot definitively answer your question because whether the proposed lease discount and freeze are gratuitous is a fact question for the governing body in the first instance, and ultimately for the court. *See* Tex. Att'y Gen. Op. No. GA-0252 (2004) at 6–7 (explaining that an attorney general opinion cannot resolve questions of fact). It is also for the governing body to initially determine whether the proposed lease terms accomplish a predominantly public purpose of the BRA, furnish sufficient control over the transaction, and provide the public with a return benefit. *See Young v. City of Houston*, 756 S.W.2d 813, 814 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ("Determining a public purpose is primarily a function of the legislature, whose decision should not be reversed, unless manifestly arbitrary and incorrect."); *Dodson v. Marshall*, 118 S.W.2d 621, 624 (Tex. Civ. App.—Waco 1938, writ dism'd) (explaining that if the commissioners court exercised reasonable discretion in leasing space in the courthouse, the district court has no authority to intervene); *Bland v. City of Taylor*, 37 S.W.2d 291, 293 (Tex. Civ. App.—Austin 1931), *aff'd sub nom., Davis v. City of Taylor*, 67 S.W.2d 1033, 1034 (Tex. 1934) (determining a public purpose is primarily a legislative function).[7] Thus, article III, section 52(a) of the Texas Constitution does not prohibit the BRA from offering a lease discount and freeze to certain lessees if the BRA's governing body reasonably determines that such lease terms satisfy the public purpose test.

---

[7]You explain that your "outside counsel has advised that such a discount or freeze would violate article III, section 52 of the Texas Constitution, as there is no specific amendment allowing such a discount or freeze." Request Letter, *supra* note 1, at 1. We have not been provided any details regarding this analysis and thus, do not address that analysis.

## S U M M A R Y

We find no statutory provision in either the Brazos River Authority's enabling legislation or applicable general laws that specifically prohibits a discounted lease rate and freeze for certain lessees.

As to article III, section 52(a) of the Texas Constitution, it does not preclude offering discounted lease rates and rate freezes to certain lessees if the lease terms do not constitute the gratuitous application of public funds for a private purpose and if the governing body reasonably determines, in the first instance, that: (1) the lease terms have as their predominant purpose the accomplishment of a public, rather than a private, purpose of the BRA; (2) the BRA retains sufficient control to ensure accomplishment of the public purpose and to protect the public's investment; and (3) the public receives a return benefit.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee