# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00260-CV

**Spicewood Springs Road Tunnel Coalition, a Texas Unincorporated Association; Joe Wheeler; and Save Our Springs Alliance, Inc., Appellants**

**v.**

**Lee Leffingwell, Mayor; Mike Martinez; Randi Shade; Sheryl Cole; Laura Morrison; Bill Spelman; and Chris Riley, Council Members; Marc Ott, City Manager, in Their Official Capacities for the City of Austin; and the City of Austin, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-11-000172, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The background of this case and the nature of the dispute are well known to the parties, and accordingly, we need not recite them in detail here. *See* Tex. R. App. P. 47.1 (directing appellate courts to issue opinions that are as "brief as practicable" but address issues necessary to final disposition); *id.* R. 47.4 (explaining that memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it"). The City of Austin proposed constructing a water treatment plant. As part of that project, the City planned to tunnel under various parklands, and the Austin City Council held a hearing to discuss the proposed construction project. At the conclusion of the hearing, the City Council voted to approve the project.

After the hearing, Joe Wheeler, Spicewood Springs Road Tunnel Coalition (the Coalition), and Save Our Springs Alliance, Inc., (the Alliance) filed suit against the following

individuals in their official capacities: Mayor of Austin, Lee Leffingwell; the City Council members, Mike Martinez, Randi Shade, Sheryl Cole, Laura Morrison, Bill Spelman, and Chris Riley; and the City of Austin's City Manager, Marc Ott. In addition to listing those officials, the petition also named the City of Austin as a defendant. For ease of reading, we will refer to the plaintiffs in the underlying case as the Residents and to the defendants as the City unless it is necessary to discuss the parties individually. Essentially, the Residents argued that the City failed to comply with the requirements of chapter 26 of the parks and wildlife code when it convened the hearing and when it approved the project. *See* Tex. Parks & Wild. Code §§ 26.001-.004. In their suit, the Residents sought various types of injunctive relief.

In response to the Residents' petition, the City filed a plea to the jurisdiction. In its plea, the City argued that the Residents do not have standing to pursue their claims. After reviewing the plea and convening a hearing on the matter, the district court granted the plea and dismissed without prejudice all of the Residents' claims.

On appeal, the Residents contend that the district court erred by granting the City's plea because they have standing to pursue their claims. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (explaining that determining whether "pleader has alleged facts that affirmatively demonstrate . . . jurisdiction is question of law reviewed *de novo*" and that courts must construe pleadings liberally in favor of plaintiffs). In general, for there to be standing, there must be a real controversy between the parties that will be determined by the requested judicial relief. *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Unless a statute confers standing, a plaintiff must show that the defendant has caused him a particularized injury that is distinct from

2

the public in general. *Id.* Further, the injury must be actual or imminent and not be hypothetical. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008). For an association to have standing to sue on behalf of its members, the association must show that "(1) its members would have standing to sue on their own, (2) the interests [that the association] seeks to protect are germane to its purpose, and (3) neither the nature of the claim nor the relief sought requires the participation of the individual members in the lawsuit." *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex. 2007) (per curiam). In its plea and on appeal, the City has limited its jurisdictional challenge to the first element of associational standing.[1] The first element of associational standing may be met if "at least one of the organization's members would have standing individually." *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App.—Austin 2010, pet. denied); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (explaining that first element is satisfied if pleadings show that association's members have a substantial risk of injury). On appeal, the Residents assert that their petition alleged particularized injuries for Wheeler and for members of the Coalition as well as the Alliance that are distinct from the public generally.[2]

---

[1] In their petition, the Residents described the purposes of the Coalition and the Alliance and alleged that the interests that the two groups sought to protect were relevant to their purposes, and the Residents contended that individual participation by members of the groups was not necessary.

[2] As a preliminary matter, we note that in their petition and in their briefs on appeal, the Residents argue that the legislature lowered the standing threshold when it enacted section 26.003 of the parks and wildlife code and also contend that the lack of compliance with the various procedural requirements outlined in the code provided another basis for establishing standing in this case. *See* Tex. Parks & Wild. Code § 26.003. Given our determination that Wheeler, the Coalition, and the Alliance have satisfied the general standing requirements, we need not address whether the enactment of chapter 26 lessened the traditional standing requirements or provided another mechanism by which plaintiffs may establish standing.

Regarding the Coalition, the Residents asserted that some of its members owned property and lived near the parkland. In fact, the Residents alleged that some members "reside on property immediately across the street" from the parkland. Further, the Residents explained that members "of the Coalition have already experienced excessive noise and dust" from the construction, that members will "suffer substantial inconvenience and interference with the use and enjoyment of their homes" due to the noise and dust, that the City's construction trucks will congest the neighborhood roadways used by members, and that members living across the street from the park will be unable to avoid the noise and inconvenience of the construction traffic. Moreover, the Residents described how one member of the Coalition living near the parkland "suffers from a serious respiratory condition that will be aggravated" by the dust created by the proposed construction.[3]

The Residents made similar claims regarding the Alliance. In particular, the Residents related that some of its members own property and live near or "in close proximity to the parkland." In addition, the Residents stated that some Alliance members "have already experienced excessive noise and dust" from testing for the proposed construction on the parkland, that one member has a "respiratory condition that will be aggravated by the presence of dust from" the proposed construction, that members "will suffer substantial inconvenience and interference with the use and enjoyment of their homes as a result of the noise and dust from blasting and drilling operations on the parkland," that members will not be able to avoid the noise and traffic congestion resulting

---

[3] The Residents also related that members of the Coalition use and enjoy the parkland and that some members observe or study the wildlife in the area.

from the presence of trucks used to carry supplies and haul away debris from the parkland, and that construction workers will park on the narrow roads in the neighborhood near the project in which some members live. Finally, the Residents explained that the presence of construction lights at night in the parkland will intrude on the tranquility of some of the members' homes and harm their "property values and aesthetic enjoyment of their property."[4]

As for Wheeler, the Residents stated that he owns property across the street from the parkland and that he "uses and enjoys the trail and opportunities for recreation and observation of wildlife" in the parkland. Further, the Residents contended that as an owner of property across the street from the parkland, Wheeler's interests in his property will be affected by the same construction effects and congestion alleged for members of the Coalition and the Alliance. In addition, the Residents urged that because Wheeler conveyed portions of the parkland at issue to the City and because the land was conveyed "for the express purpose of use as a park," he has a special interest in the City's actions and has suffered a unique injury.

In light of the preceding, we must conclude that the Residents alleged a particularized injury for Wheeler and demonstrated that members of the Coalition and the Alliance would have standing to sue on their own due to particularized injuries. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 253 (Tex. App.—Austin 2002, pet. denied) (discussing particular injury); *compare City of Laredo v. Rio Grande H20 Guardian*, No. 04-10-00872-CV, 2011 Tex. App. LEXIS 5729, at *12 (Tex. App.—San Antonio July 27, 2011, no pet.) (mem. op.) (concluding that associational

---

[4] When describing the Alliance, the Residents also listed various actions undertaken by members to conserve the parkland and asserted that the proposed construction will pose a risk to various wildlife, including endangered species, in the area.

5

standing was met when members owned property near rezoned areas and that they "will be adversely affected by the pollution, litter, noise, light, traffic, dust, and other disturbances likely to result from the rezoned areas")*, Save Our Springs Alliance, Inc.*, 304 S.W.3d at 880 (stating that while injury to environmental interest alone may not be sufficient to confer standing, cases have held that impairment to plaintiff's property interests makes "injury sufficiently particularized so as to distinguish the harm from that experienced by the general public"), *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 295 (Tex. App.—Austin 1998, pet. denied) (determining that agency erred by concluding that first element of associational standing was not met when member alleged that he lived close to facility, that he smelt odors coming from facility, and that odors had affected his breathing and forced him to seek medical help), *and Texas Rivers Prot. Ass'n v. Texas Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 151-52 (Tex. App.—Austin 1995, writ denied) (concluding that individual and association had standing because they alleged that individual and members own property "fronting the affected area of the river, with attendant riparian rights," that proposed water diversion would injure their aesthetic and recreational interests, and that water diversion would harm canoeing business run by individual and member), *with City of Dallas v. Robinson*, No. 05-98-02113-CV, 1999 Tex. App. LEXIS 5316, at *5 (Tex. App.—Dallas July 8, 1999, pet. denied) (determining that plaintiffs had no standing because they did not allege that they owned property near park or will suffer any property damage and because only harm alleged was that average citizen will not be able to afford increased green fees), *Persons v. City of Fort Worth*, 790 S.W.2d 865, 869-70 (Tex. App.—Fort Worth 1990, no writ) (concluding that owner of property near park did not have standing to challenge proposed changes to park

6

because his "primary complaints" were not unique or peculiar to him and simply alleged that his prior uses of park "must now be conducted in other areas of the park which are not as conveniently accessible to him as before"), *and San Antonio Conservation Soc. v. City of San Antonio*, 250 S.W.2d 259, 263-64 (Tex. Civ. App.—Austin 1952, writ ref'd) (explaining that appellants had no justiciable interest in controversy because "any right which they have to enjoy the charm and beauty of the San Antonio River . . . is a right shared in common with . . . the public in general" and that appellants did not allege any interference with property that they actually owned).

Accordingly, we sustain the Residents' issue on appeal challenging the district court's decision to grant the City's plea. Having sustained that issue, we reverse the district court's order granting the plea and remand the case for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
     Justice Henson not participating

Reversed and Remanded

Filed:  June 6, 2013